### MARY LEE v. ANNA LEE.

No. 3589.   Decided February 7, 1923.

(247 S. W., 828.)

**1.—Community Property—Putative Wife.**

The putative wife, and not the former undivorced and lawful wife, is entitled to one-half interest in all community property acquired during the existence of the putative marriage.   (p. 398, 399).

**2.—Same—Insurance—Master and Servant.**

The amount which, by the terms of a contract between employer and employee, was due from the former to the estate of the latter on his death while in the employment and after completing a designated period of service therein, was not, though designated in the contract as a "death benefit," created under a plan of life insurance nor to be paid as under an ordinary life insurance policy. Morton v. McAllister, 94 Texas, 567; Rowlett v. Mitchell, 52 Texas Civ. App. 589; distinguished.   (p. 399).

**3.—Same.**

The proceeds of a contract between an employer and a married employee, made payable by its terms, on the death of the latter, "according to the laws of Texas applicable to the estates of deceased persons," constituted a part of the general or community estate of which he was head and master, and not his separate estate. If the contract be treated as a form of life insurance, it would be of the nature of an endowment policy; and being due the estate, and not a specified beneficiary, it would be considered community property thereof.   Martin v. Moran, 11 Texas Civ. App., 509, approved.   (pp. 399, 400).

**4.—Same—Workmen's Compensation Law.**

The contract providing for the payment by the employer of a death benefit to the beneficiaries or to the estate of an employee, measured by his wages and term of service, is analogous, rather, to the Workman's Compensation Laws of 1913 and 1917 than to life insurance, and should, like the former, be held to be a part of the community estate. Texas Employer's Insurance Assn. v. Boudreaux, 231, S. W. 756. (p. 400).

**5.—Community Property—Death Benefit from Employer to Employee—Statute.**

The death benefit due from the employer to the estate of a married employee by the terms of their contract, and based as to amount on wages paid and length of continuance in service, was acquired, though contingent on death in the service, by performance of such contract by the husband during the existence of the marriage, and was, in effect, a part of the wages of, his labor. It was not so acquired by devise or descent, nor was it a gift, being based on contract and for a valuable consideration. By the terms of our statute it is declared to be community property of the husband and wife. Revised Statutes, articles 4621, 4622, 4623. (pp. 400-404).

**6.—Case Stated.**

Plaintiff, who was separated from her husband and undivorced, on his death sued the company of which he had been an employee for the amount of a "death benefit" due under his contract of employment, based on his wages and length of service, and payable by its terms, he having designated no beneficiary thereof, "according to the laws of Texas applicable to the estates of deceased persons." She made defendant, also, his putative wife who had married believing him to be divorced and had lived with him as such up to the time of his death and throughout the period of his employment by virtue of which the death benefit became due. The company acknowledged liability to whoever should be adjudged the lawful claimant. *Held*, that the death benefit, acquired by contract through his services, was community property of deceased and the putative wife, and that she was the owner of a half interest therein. (p. 404).

Question certified from the Court of Civil Appeals for the First District, in an appeal from Harris County.

The question was referred to the Commission of Appeals, Section A, for their opinion thereon, and same, being approved, is here certified to the Court of Civil Appeals as the answer of the Supreme Court.

*Homer Stephenson* and *S. Burns, Jr.*, for appellant.

As to Property Rights of Putative Marriages, see: Smith v. Smith, 1 Texas, 621; Lee v. Smith, 18 Texas, 142; Carroll v. Carroll, 20 Texas, 731; Routh v. Routh, 57 Texas, 602; Morgan v. Morgan, 1 Texas Civ. App., 315, 21 S. W., 154; Chapman v. Chapman, 16 Texas Civ. App., 382, 41 S. W., 533; Lawson v. Lawson, 30 Texas Civ. App., 43; 69 S. W., 246; Barkley v. Dumke, 99 Texas, 150, 87 S. W., 1147; Merrell v. Moore, 104 S. W., 514; Hammond v. Hammond, 108 S. W., 1024; Middleton v. Johnston, 110 S. W., 789; Ft. Worth & R. G. Ry. Co. v. Robertson, 121 S. W., 204; (Dissenting Opinion of Judge Dunklin approved by the Supreme Court in 103

Texas, 504, 131 S. W., 400); Green v. Green, 167 S. W., 263; Ann. Cas. 1913A, 231; 13 R. C. L., 944, Sec. 13; Parker v. Parker, 222 Fed., 186.

As to Property Rights of Parties to Putative Marriage in absence of showing of efforts of each, see: Ft. Worth & R. G. Co. v. Robertson, 121 S. W., 204 (Dissenting Opinion Judge Dunklin, page 206).

Death Benefits, based on continued employment and employee's salary or wages, are acquests and gains under putative marriage, which putative marriage is to be considered in the nature of partnership; see: Definition of "Profit" and "Profits," 32 Cyc. 585-592; 30 Cyc. 424: "What is firm property.— * * * and so do the profits of the business," etc.; Routh v. Routh, 57 Texas, 602; Morgan v. Morgan, 1 Texas Civ. App., 315, 21 S. W., 155; Middleton v. Johnston, 110 S. W., 789; 30 Cyc. 444: "Interest of partners in Firm Property;" 30 Cyc. 451: "Interest of Partners in Profits;" 30 Cyc. 452; "Losses and profits to be borne in equal proportions unless otherwise agreed upon;" and note 64, citing Cheeves v. Anders, 87 Texas, 287, 28 S. W., 274.

Trust relation between parties continues until all of the assets are collected and distributed, see: Cheeves v. Anders, 87 Texas, 287, 28 S. W., 274; Blackwell v. Farmers & Merchants Natl. Bank, 97 Texas, 445, 79 S. W., (Sup.), 518; Filburn v. Ivers, 92 Mo., 388, 4 S. W., 674; Holmes v. Gilmore, 138 N. Y., 369, 34 Am. St. Rep., 463; 30 Cyc. 499, 538, 620, 622, 629.

A Plan for Death and Disability Benefits not subject to Insurance Laws of Texas: Bunch v. Tennessee Mfg. Co., 62 S. W., 240.

Intent of Parties to Control in determining whether property is separate or community property: Martin v. McAllister, 94 Texas, 567; Speer's Law of Marital Rights in Texas, Sec., 325.

As to Duty of Husband to Support Wife, see: Cline v. Hackbarth, 27 Texas Civ. App., 391, 65 S. W., 1086; Morgan v. Hughes, 20 Texas, 141.

As to difference in policies of insurance made payable to a designated beneficiary and those made payable to the estate of insured, see: Fletcher v. Williams, 66 S. W., 861; Coleman v. Anderson, 82 S. W., 1058; 32 Cyc. 669; 671 and Notes 11 and 12 thereunder; Martin v. Moran, 11 Texas Civ. App., 509, 32 S. W., 904.

Putative wife had insurable interest: Ann. Cas. 1913-A, page 243; Supreme Tent, etc. v. McAllister, 132 Mich., 69; 102 Am. St. Rep., 382, 92 N. W., 770; Joyce on Insurance, 1917 Edition, Sec. 816.

Even if Insurance Policy, same would be a chose in action: Coleman v. Anderson, 82 S. W., 1057; 32 Cyc. 671, and notes 11 and 12 and cases cited therein.

And "Chose in Action" is personal property: 32 Cyc. 669; Coleman v. Anderson, 82 S. W., 1057; Martin v. Moran, 32 S. W., 904, 11

Texas Civ. App., 509; Altgelt v. Alamo Natl. Bank, 98 Texas, 252.

*Woods, King & John,* for appellee.

The death benefit provided by the employer for the beneficiaries of a deceased employe, when no beneficiary was designated by said deceased employe, by its terms, in the absence of such designation, being payable according to the laws of descent and distribution of the State of Texas, but limited to the surviving wife, husband, child, father or mother, did not become a part of the estate either of the deceased employe, in his own separate right, or a part of the community estate of either himself and lawful wife, or himself and putative wife, but simply is an obligation on the part of the employer accruing by reason of the death of the employe, and payable after and because of such death, according to the laws of descent and distribution, to the heirs of such employe within the class limited by the express terms of the death benefit contract; and there having been no children born to the deceased employe, the death benefit becomes a fund payable to his wife, who, under the Statutes, would have been entitled to inherit the entire separate personal estate of the deceased employe. Martin v. McAllister, 94 Texas, 567, 63 S. W., 624, 56 L. R. A., 585; Ft. Worth & Rio Grande Railway Company v. Robertson, 103 Texas, 504, 131 S. W., 400, Ann. Cas. 1913-a, 231.

The learned majority opinion sought to avoid the provision of the contract providing "that in the absence of designation by the employee, and if there shall survive no wife, husband, child, father, nor mother, the death benefit shall lapse," by saying:

"The provision that in the absence of a designation of the beneficiary by the employe the death benefit shall lapse, if there be no surviving wife," etc, "of the employe, cannot be invoked, because there is a surviving wife."

In other words, the fact that there is a surviving wife, to-wit, Appellee herein, Anna Lee, is what prevents the lapse of this policy.

We have here a death benefit contract by its express terms payable, on the facts of this case, "according to the laws of Texas then in force applicable to the Estates of deceased persons," and limited, on the facts of this case, to the wife of Joseph H. Lee.

The Appellant, Mary Lee, was not his wife; on the other hand the Appellee, Anna Lee, was his wife. This is the unmistakable holding of the Supreme Court in Fort Worth & Rio Grande Railway Company v. Robertson, above cited, in which it declared that the dissenting opinion of Mr. Justice Dunklin, 121 S. W., 204-207, correctly stated the law.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This case comes from the Court of Civil Appeals for the First District upon the following certificate:

"To the Honorable Supreme Court:

This suit was brought by appellee Anna Lee against The Texas Company and appellant Mary Lee to recover the sum of $1260.00, alleged to be due plaintiff by The Texas Company under a contract made by it with her deceased husband, Joseph H. Lee. Appellant Mary Lee was made a party defendant upon allegations that she was asserting a claim to the money for which plaintiff sued. No issue appears to have been made by The Texas Company as to its liability upon the contract with Joseph H. Lee declared upon in plaintiff's petition, nor as to the amount due by it under said contract. The only issue presented by the pleadings is whether the appellant Mary Lee is entitled to recover all or any portion of the amount due under said contract.

The cause was tried in the court below upon the following agreed statement of facts:

'I.

Joseph H. Lee, late an employee of The Texas Company, defendant herein, died on or about March 27, 1919.

II.

At the date of the said Joseph H. Lee's death, he was an employee of the Refining Department of defendant, The Texas Company.

III.

There was in force, at the date of the death of the said Joseph H. Lee, a plan for employes covering, among other things, death and disability benefits promulgated by the said defendant, The Texas Company, for the benefit of its employees, a printed copy of such plan being attached hereto, marked Exhibit 'A' and made a part hereof.

IV.

That under and by virtue of the said plan for employes, there accrued as a death benefit in favor of beneficiaries to be ascertained, from The Texas Company, the sum of $1260.00; which said sum The Texas Company admits it is liable for, and which sum is properly payable to whomsoever the Court may adjudge is entitled thereto under the evidence to be adduced in this case in connection with said plan for employes and the other admitted facts in this case.

V.

The said Joseph H. Lee and plaintiff herein, Anna Lee, were married in Acadia Parish, Louisiana, on March 7th, 1906, which said marriage has not been legally dissolved by any judgment of any court.

## VI.

That sometime during the year 1913, plaintiff, Anna Lee, who was then living at Port Arthur with her husband, Joseph H. Lee, went to New Orleans, Louisiana, and remained there until July 1919, when she returned to Port Arthur, Texas. During all of these years Joseph H. Lee's legal residence and place of work was Port Arthur, Texas.

## VII.

Defendant herein, Mary Lee, believing that Joseph H. Lee and Ann Lee had been divorced, on or about September 15, 1916, was married to defendant, Joseph H. Lee, at Port Arthur, Texas, and thereafter under the belief that she was the lawful wife of the said Joseph H. Lee, lived with him as such wife and continued to believe she was the wife of the said Joseph H. Lee, and lived with him as such up until the date of his death, during which time she cared for him in his illness and otherwise conducted herself toward him as his wife; and that the said Joseph H. Lee died at her house, and was waited on by her in his last illness, and buried by her at his death.

## VIII.

Joseph H. Lee had no children.'

The plans promulgated by The Texas Company providing a death and disability benefit, and which when acted upon became a contract with its employee, Joseph H. Lee, under which the death benefit of $1260.00 in controversy in this suit accrued, contain the following provisions:

'Death and Disability Benefits.

1. *Death.* Benefits will be paid, as hereinafter stated, upon the death of employes who at the date of death or the beginning of their last illness shall have been one year or longer in the active, continuous and exclusive service of this Company or its subsidiaries.

2. *Total and Permanent Disability.* Benefits will be paid also, as hereinafter stated, upon the total and permanent disability of employes who at the date of such disability shall have been one year or longer in this service, actively, continuously and exclusively.

3. *Payments.* The amounts payable will be the same whether the employee dies or becomes totally and permanently disabled. In either event the company will pay, in monthly installments corresponding to the salary or wages received by the employee at the date of death or such disability, four months full pay in cases where the term of service is one year, and one month's full pay for each complete six months of additional service; but in no case shall the amount exceed twelve months full pay or exceed a total of $5,000.00.

4. *Beneficiaries.* Employes should immediately file with the company written designations of the beneficiary or beneficiaries to whom death benefits are to be paid. The employes will have the privilege of revoking such designation or changing it at discretion by filing a written revocation or new designation. If an employee files no such designation, death benefits will be payable according to the laws of Texas then in force applicable to the estates of deceased persons: Provided, however, that in the absence of designation by the employee, and if there shall survive no wife, husband, child, father, nor mother, the death benefit shall lapse.

Disability benefits will be paid directly to the employee.'

Joseph, Anna, and Mary Lee are all negroes. There was no designation by Joseph Lee of a beneficiary of the death benefit which accrued to him under the provisions of his contract with The Texas Company, and it is not shown that either of his wives had any knowledge of the existence of his death benefit until after his death.

Upon these facts the trial court held that all of the $1260.00 belonged to Anna Lee, the lawful wife, and rendered judgment accordingly.

Upon consideration of the questions raised by this appeal the majority of the Court reached the conclusion that the appellant, Mary Lee, the putative wife, was entitled to one-half of the sum in controversy. Justice Lane dissents from this view and is of opinion that the legal wife was entitled to all of the fund. Copies of the majority and dissenting opinions are sent up with this certificate and made a part thereof.

The case is now pending before us on motion for rehearing. Because of the importance of the question involved, we deem it advisable to certify for your determination the following question:

Upon the facts stated, is the appellant Mary Lee entitled to the money due the deceased, Joseph H. Lee, under his contract with The Texas Company, or any part thereof?''

Texas, with just a few other states of the union, has adopted as the basis of its laws relating to estates held by husband and wife the principles of the civil law, and our statutory enactments are in large measure declaratory of these principles. This is particularly true with reference to the laws relating to community property. Under the principles of this law, as recognized by numerous decisions of our courts, Mary Lee was the putative wife of Joseph H. Lee and possessed all the rights and privileges of a lawful wife, to the extent of being entitled to an equal interest with Joseph H. Lee in all community property. The Court of Civil Appeals was not divided on this question, and it is so well settled that discussion of that issue is not necessary. As the putative wife of Joseph H. Lee appellant Mary Lee was entitled at his death to a one half interest in all community property acquired during the existence of the put-

ative marriage. Barkley v. Dumke, 99 Texas, 150, 87 S. W., 1147; Lee v. Smith, 18 Texas, 142; Hammond v. Hammond, 49 Texas Civ. App., 482, 108 S. W., 1024 (writ denied), Morgan v. Morgan, 1 Texas Civ. App., 315, 21 S. W., 154.

The question upon which the judges of the Court of Civil Appeals were divided, and which is the controlling question in the case, is, whether the death benefit payable to Joseph H. Lee by the Texas Company under the plan adopted for its employees is to be considered community property, as that term is known to our law, or was it the separate estate of Joseph H. Lee. This question, upon first impression, presents some difficulty, but we think that difficulty is removed when the provisions of our statutes are considered in the light of the development of our laws pertaining to marital estates.

The uncertainty surrounding the question arises out of a consideration of the character of the fund held by The Texas Company for the beneficiary of Joseph H. Lee, in connection with his failure to designate a beneficiary to take such benefit. Counsel for appellee base their contentions and argument upon the proposition that the plan adopted by The Texas Company under which this benefit was created was a plan of life insurance, and the accrued benefit was to be paid as under the terms of an ordinary life insurance policy. They rely upon the case of Martin v. McAllister, 94 Texas, 567, 63 S. W., 624, and Rowlett v. Mitchell, 52 Texas Civ. App., 589, 114 S. W., 845. However, we are unable to find anything in the agreed statement of facts or the provisions copied from the plan adopted by The Texas Company which would lead to the conclusion that such plan was one of life insurance for its employees, with the possible exception of the use of the words "death benefits." But the word "benefits" may very properly be applied to various things accruing to a person other than the proceeds of a contract of insurance. If such benefits partake at all of the nature of moneys payable under an insurance contract, they are more nearly in the nature of an endowment than the proceeds of an ordinary life policy, and are governed by different rules.

Joseph H. Lee having failed to designate a beneficiary, under article 4 of the plan the benefits were payable "according to the laws of Texas applicable to the estates of deceased persons." As we construe this language, Lee having failed to designate any beneficiary, the benefits became vested in his estate, subject to the laws applicable to that estate. And this "estate" must be construed to be the general or community estate of which he is head and master, and not his separate estate. If the decision of the case were based upon this issue, which, in our opinion, is not necessary, we believe the authorities support the conclusion that the proceeds of an insurance policy (and particularly an endowment), when the same is

payable to the estate of the insured, upon his death are a part of the community estate. Martin v. Morgan, 11 Texas Civ. App., 509, 32 S. W., 904, Succession of Buddig, 108 La., 406, 32 So., 361, Succession of Le Blanc, 142 La., 27, 76 So., 223, L. R. A., 1917F, 1137.

The case of Martin v. McAllister and Rowlett v. Mitchell involve policies of insurance designating particular beneficiaries, and in each instance it was properly held that the proceeds of such policies were the separate property of the beneficiary named. In the case of Martin v. McAllister Judge Brown refers to the case of Mullins v. Thompson, 51 Texas, 7, which distinguishes between an endowment policy and an ordinary life policy. Judge Brown also cites several Louisiana cases sustaining the proposition that when a policy is made payable to the wife of the insured the proceeds therefrom become her separate estate, but those cases in no way conflict with the Louisiana cases referred to above, which furnish very convincing reasoning for the proposition we have stated.

But it appears to us, by analogy, if we resort to such, that the plan adopted by The Texas Company is to be considered as a plan of compensation for the benefit of its employees in lieu of the compensation provided for in the Workmen's Compensation Acts of 1913 and 1917. Such compensation has been held to be community property. Texas Employers' Ins. Ass'n v. Boudreaux, 231 S. W., 756. In that case Judge Taylor, speaking for Section A of the Commission of Appeals, used this language:

"The compensation provided by the act arises out of the contractual relations between the employer and the deceased employe. When awarded for death of the employe, it is in substitution for damages ordinarily recovered by statute because of the death of the employe due to the negligence of the employer. Middleton v. Texas Power & Light Co., 108 Texas, 96. It is measured by the current wages of the deceased, and is to all practical purposes to supply to his beneficiaries the means of support which were afforded by his wages prior to his death. Its payment is provided for 'from week to week as it accrues,' except in special cases. The right of the deceased to have the compensation paid his beneficiaries in case of his death was acquired by him during coverture. His wages flowing from his contract of employment under which he was working at the time of his death were community property. The compensation measured by his community wages and having its source, as it were, in the same contract of employment, partake more nearly of the nature of the community than of separate property; and it should be distributed, in our opinion, according to the statute of descent and distribution applicable in distributing community property."

We do not deem it necessary, however, to base a decision of this case on the foregoing conclusions. We believe a decision can be

reached under a proper interpretation of our statutes that should settle the issue in a manner beyond all doubt.

As touching the rights of the parties in this case our statutes provide as follows:

"Art. 4621. All property, both real and personal, of the husband owned or claimed by him before marriage, and that acquired afterwards by gift, devise or descent, as also the increase of all lands thus acquired, and the rents and revenues derived therefrom, shall be his separate property.

"Art. 4622. All property acquired by either the husband or wife during marriage, except that which is the separate property of either one or the other, shall be deemed the common property of the husband and wife.

"Art. 4623. All the effects which the husband and the wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved."

Our laws recognize that married persons have two distinct and well-defined property rights. These two are naturally incident to the conception that their status with reference to property is one of marital partnership. The first right is that of each of the spouses to their separate property, and the second is as to the community property belonging to both, in which their rights are unified and are equal. All property, effects or gains must necessarily fall within one or the other of these classes. Our lawmakers have not troubled themselves to define community property, other than to say that it shall include *all* property acquired by either the husband or wife during marriage, except that which is the separate property of either one or the other. In many cases, and in the present one, no other definition is necessary. The statutes having defined and limited the separate property of the husband and wife, it follows with absolute certainty that all other property acquired by them during the marriage is a part of the common estate. So generous was the civil law to the cause of the community estate that the Legislature has seen fit to somewhat liberalize the provisions with reference to the separate estates of the husband and wife, but the statutory provisions with reference to the separate estate must be strictly construed, leaving the law with reference to the community rights to be construed with the greatest freedom. This we conceive to be the meaning of Article 4623, which provides that *all* the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, *unless the contrary be satisfactorily proved.* So concisely and appropriately has this been expressed in a recent decision by the Supreme Court of Arizona that we make the following brief quotation therefrom:

"The law makes no distinction between the husband and wife in

respect to the right each has in the community property. It gives the husband no higher or better title than it gives the wife. It recognizes a marital community wherein both are equal. Its policy plainly expressed is to give to the wife in this marital community an equal dignity, and make her an equal factor in the matrimonial gains. It recognizes that property acquired during marriage by community funds or the labor and industry of either spouse . . . is the common property of the husband and wife. All that either the husband or wife or both may acquire during the existence of the marriage, *other than is specifically excepted,* is an acquest of the community, and the presumption in all doubtful cases is strongly in favor of treating that which either spouse may own as community property. It recognizes that the wife in her station is as much an agency in the acquisition as the husband, and is entitled to just as great an interest. It is altogether fitting and proper that woman should be thus esteemed by the law in fixing her status if she is to be considered in fact as well as in theory an essential factor in the economy of the marital community." La Tourette v. La Tourette, (15 Ariz., 200), 137 Pac., 426. (Italics ours).

This is the holding of our Supreme Court in Dixon v. Sanderson, 72 Texas, 359, 13 Am. St., 801, 10 S. W., 535, and Ezell v. Dodson, 60 Texas, 332. See also De Blanc v. Lynch & Co., 23 Texas, 28; Speer's Law of Marital Rights in Texas, pages 389-392.

Judge Speer, whose book upon Marital Rights is regarded as of the highest authority, defining what constitutes the community property says:

"It includes all property acquired by either husband or wife during marriage except that acquired by gift, devise or descent, and except the increase of the separate lands. No limitation whatever as to source of title or means of acquisition are imposed, further than the exceptions noted. Whether the new acquisition be the result of the husband's individual labor, skill or profession, or of the wife's, the rule is the same. If the earnings be the fruits, revenues, hire, increase, profits or interest derived from the individual estate of either spouse, or from the community estate, all come within the scope of the statute. The term 'property' as used in the act is employed in its ordinary legal sense, and includes all things to which that appellation may be given, whether corporeal or incorporeal, real or personal."

And further he says:

"The general trend of our decisions is to hold the community the all-important estate during marriage, and to regard the separate estates as creatures wholly of the statute; and where there is doubt or difficulty in applying the strict letter of that statute to a particular fund or property, the usual course is to declare it community by force of the presumptions previously noticed."

It is hardly necessary to notice the contention that the amount due by The Texas Company at the death of Joseph H. Lee was not "property," or had not been "acquired" during the marriage with Mary Lee. The agreed statement of facts specifically shows that under the plan adopted by the company there "accrued as a death benefit . . . the sum of $1260.00." As we construe this language, and the plan that was followed by the company, this sum of money had already been accumulated and was due under the contract with Joseph H. Lee, but that its payment was merely held in abeyance until the happening of certain contingencies. The word "acquired" is not to be construed in any restricted sense, but must necessarily have that broad signification as will include all effects or gains or property of every kind coming to the husband or wife during coverture in any manner other than by "gift, devise or descent." Savage v. Wauhop, 143 S. W., 263, in which writ of error was denied, Corpus Juris, Book 1, page 733.

It is only left for us to determine whether or not the death benefit which had accrued at the date of the death of Joseph H. Lee was a "gift" to him, for, admittedly, it was not acquired by "devise or descent;" and if it be determined that it was not a "gift" it necessarily follows that the same was a community acquest of Joseph H. Lee and Mary Lee. Bouvier defines a gift to be:

"A voluntary conveyance or transfer of property; that is, one not founded on the consideration of money or love. A voluntary, immediate, absolute transfer of property without consideration."

In view of this definition it becomes at once apparent that the benefit which had accrued in favor of Joseph H. Lee, in case of his total disability, or in favor of his estate, was in no sense a "gift," in the purview of the statute, as it was based upon a contract for a valuable consideration. It will be noticed that the plans adopted by The Texas Company, *when acted upon,* became a *contract* with its employees, and the consideration for such contract upon the part of the employee was the condition that he "shall have been one year or longer in the active, continuous and exclusive service of the company or its subsidiaries." From this it appears that the consideration for this benefit was directly related to and was an essential part of the contract of employment between Joseph H. Lee and The Texas Company. It bears such relation to his services and labor that it could have no existence without them. It will be further noticed that such plan provided for payments in "monthly installments corresponding to the *salary* or *wages* received by the employee at the date of death or disability, four months full pay in cases where the term of service is one year, and one month's full pay for each complete six months of additional *services.*" In our opinion this language clearly indicates that this "benefit" sustained such relation to the salary or

wages of the employee as to be in effect a part thereof. It was in no sense a donation to the employee for individual merit, but was manifestly additional compensation for faithful and continuous service. It was as much a fruit of his labors as his regular wages or salary. It was in the strictest sense a "gain" added to the common acquests of the marital partnership, as the direct result and fruit of his labor and services. It is admited that while Joseph H. Lee was performing the services which became the consideration for the contract under which this benefit accrued Mary Lee was living with him and performing her part of the marriage enterprise, and her services and labor necessarily contributed to the accumulation of this particular gain.

We have found no authority in point upon the whole case, but the case of Andrews v. Andrews, 116 Wash., 513, 199 Pacific, 981, by the Supreme Court of Washington, on principle is analogous.

We therefore answer the question propounded by the Court of Civil Appeals by saying that Mary Lee was entitled in her own right to one half of the sum of money held by The Texas Company, and judgment should be rendered in her favor for the amount.

### BY THE SUPREME COURT.

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals.

*C. M. Cureton,* Chief Justice.