HART v. FIRST STATE BANK OF SEMI-
NOLE et al.  (No. 2368.)

Court of Civil Appeals of Texas.  El Paso.
Jan. 9, 1930.

Rehearing Denied Jan. 30, 1930.

Wilson, Randal & Kilpatrick, of Lubbock,
for appellant.

Garland & Yonge, of Lamesa, for appellees.

PELPHREY, C. J.  Prior to August, 1926,
the First State Bank, Seminole, Tex., was a
corporation organized and existing under the
laws of Texas, with its principal office and
place of business at Seminole, Gaines county,
Tex.  It ceased to exist in August, 1926, by
the expiration of the time limit fixed in its
charter.  The officers of the bank were un-
aware of the time of said expiration, but be-
lieved its existence continued until 1927.
Upon making application to renew the charter
of said bank, they were advised that the
corporation had ceased to exist, and, upon
advice of the banking commissioner, some
of the officers and stockholders organized an-
other corporation known as First State Bank
of Seminole.

For the purpose of this discussion, and to
avoid confusion, we will refer to the First
State Bank, Seminole, Tex., as the old bank,
and to First State Bank of Seminole as the
new bank.

It appears that the officers and directors of
the old bank, at the time its charter expired,
were S. R. Simpson, president, John C. Hart,
vice president, B. B. Curry, cashier, L. D.
Richards and D. Lord, directors.

The directors of the new bank at the time
of its incorporation were S. R. Simpson, L. D.
Richards, T. F. Lindley, W. A. Cox, and B. B.
Curry.

On March 23, 1927, after the expiration of
the time fixed in its charter, but before the
officers became aware of such fact, appellant
executed two notes in the sum of $2,634.43
and $974.94, respectively, payable to the old
bank, and due May 18, 1927, and on May 18,
1928, said first-mentioned note was renewed;
the renewal note being due and payable on
August 18, 1927.

As security for the above notes, appellant
executed a deed of trust in favor of the old
bank on certain real estate in Gaines county,
Tex., naming W. A. Cox as trustee.

On October 17, 1927, a bill of sale was
executed by S. R. Simpson, as president of the
old bank, conveying to the new bank all the
properties of the old bank, and the same was
attested by B. B. Curry, as secretary, and L.
D. Richards, W. A. Cox, and B. B. Curry, as
directors and trustees.

On April 1, 1929, appellant filed this suit
in the district court of Gaines county against
the new bank and W. A. Cox.

In his petition he alleged that the old bank
had ceased to exist; that the directors, upon
the expiration of the time provided in the
charter, became the trustees of the creditors
and stockholders of the old bank; that the
acknowledgment of appellant to the deed of
trust was taken by B. B. Curry, one of the
trustees for the creditors and stockholders
of the old bank, and, being an interested party,
no lien was created by said deed of trust, and
therefore not subject to foreclosure; that
Simpson, Curry, Richards, and Cox conceived
a plan and scheme to purchase the assets of
the old bank for a grossly inadequate consid-
eration for the new bank, the stock of which
they owned all except 30 shares;  that the

sale made pursuant to such plan and scheme was for a grossly inadequate consideration; that the sale was illegal because of having been made to themselves, and therefore of no force and effect; that the notes executed by appellant, if valid, are the assets of the old bank, and belong to the stockholders thereof; that the new bank was asserting title to the notes and deed of trust lien; and that Cox, as trustee, has advertised the property for sale under the deed of trust, and, unless restrained, the stockholders of the old bank will be defrauded.

Appellant then prayed that appellees be restrained from selling the property, and that such injunction be made permanent.

A temporary injunction as prayed for was issued by the court, but upon final hearing the same was dissolved.

Appellees answered by a general demurrer and adopting part of the allegations of appellant, but specially denied that the deed of trust was invalid because of the acknowledgment having been taken by Curry; specially alleged it to be a valid and subsisting lien and owned by the new bank; specially denied that the acquisition by the new bank of the assets of the old bank was illegal and fraudulent, but that the taking over of the assets of the old bank by the new bank was a bona fide, legal, and honest transaction carried out by the trustees of the old bank for the benefit of its creditors and stockholders; that, by the organization of the new bank and thereby continuing the banking business, the assets of the old bank could be utilized to a greater advantage and made to yield more to the stockholders of the old bank than would have resulted from any other disposition of them; that all of the stockholders of the old bank were invited to participate and share in the organization of the new bank to the extent of their shares in the old bank; that appellant refused to participate in the organization of the new bank, but that appellees now tender to him stock in the new bank on the same terms and conditions under which the other stockholders acquired their stock; that, but for the plan adopted by appellees for handling the assets of the old bank, the stockholders thereof would have been subjected to an assessment of from 25 per cent. to 50 per cent., the assets being insufficient with which to pay the creditors; that the notes in question were acquired by the new bank in good faith and for a valuable consideration; and that the acts of the directors of the old bank in transferring the assets thereof to the new bank were done in their fiduciary capacity, in good faith, and for the benefit of appellant and the other stockholders of the old bank.

Appellees prayed that the injunction theretofore issued be dissolved, and, in cross-action, for judgment against appellant on the notes for principal, interest, and attorney's fees, for foreclosure of the deed of trust lien on the property described therein, and sale thereof.

Appellant, by supplemental petition, pleaded that the new bank was not the owner of the notes, but that same were the property of the stockholders of said old bank, and that they should be made parties to the cross-action of appellees, demurred generally to appellees' answer and cross-action, and denied generally the allegations therein.

Upon a trial before the court, the injunction was dissolved, and judgment rendered in favor of the new bank against appellant for the amount of the notes, interest thereon, and for attorney's fees, and foreclosing the deed of trust lien.

This appeal has been taken from that judgment.

## Opinion.

Appellant's propositions upon which he seeks a reversal of the judgment are: (1) That the charter of the old bank having expired in August, 1926, with S. R. Simpson, John C. Hart, B. B. Curry, L. D. Richards, and D. Lord, its officers and directors, and the new bank being organized in October, 1927, with S. R. Simpson, L. D. Richards, T. F. Lindley, W. A. Cox, and B. B. Curry, as directors, S. R. Simpson, B. B. Curry, L. D. Richards, and W. A. Cox had no power or authority to sell and convey the assets of the old bank without the joinder of appellant and D. Lord, and an attempted sale under deed of trust executed by appellant to the old bank securing notes payable to it and a part of its assets should be enjoined on his suit as a stockholder and director of the old bank; (2) that he having given notes secured by deed of trust on real estate to the old bank, the charter of which expired in August, 1926, with Simpson, Hart, Curry, Richards, and Lord, its officers and directors at that time, and later Simpson, Richards, Lindley, Cox, and Curry, having organized the new bank, and Simpson, Curry, Richards, and Cox, purporting to be the officers and directors of the old bank, having sold all the assets of the old bank to the new one for an inadequate consideration without notice to appellant, Lord, or to the stockholders of the old bank, appellant as a stockholder of the old bank was entitled, on hearing, a temporary injunction having already been granted, to have same made permanent; (3) that, because of the facts surrounding and preceding the sale of the assets of the old bank by Simpson, Curry, Richards, and Cox, the inadequacy of the consideration, the sale was a fraud upon the other directors and stockholders of the old bank, and that an attempted sale under a deed of trust to lands securing notes, the property originally of the old bank, should be enjoined, until the equities of the parties can be adjusted.

The first question which presents itself for consideration is that of the validity of the sale of the assets of the old bank to the new.

By virtue of the provisions of article 1388, Vernon's Ann. Civ. St., the legal existence of the old bank was continued for a limited purpose, and Simpson, Curry, Hart, Lord, and Richards became trustees for the creditors and stockholders thereof.

Under this condition, was it necessary for all the trustees to join in a conveyance of the assets of the bank, or was the concurrence of a majority sufficient?

■ It seems to be well settled that, when the administration of a trust is vested in co-trustees, they all form but one collective trustee, and must execute the duties of the office in their joint capacity. 26 R. C. L. § 196.

In 39 Cyc. p. 307, on the subject of cotrustees, we find the following doctrine laid down:

"In the case of a private trust, as distinguished from a public or charitable trust, where there are several trustees and all have accepted and are exercising the office, their powers, interest, and authority are equal and undivided; they cannot act separately, but must act as a unit, except where authority to act is given to a majority of the trustees by statute, or by the instrument creating the trust, or, possibly, in the case of an urgent emergency."

This being the rule, we must next ascertain whether by the provisions of our statutes a majority are given authority to act.

Article 1388 reads: "Upon the dissolution of a corporation, unless a receiver is appointed by some court of competent jurisdiction, the president and directors or managers of the affairs of the corporation at the time of its dissolution shall be trustees of the creditors and stockholders of such corporation, with power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them after paying all just and reasonable expenses; and for this purpose they may in the name of such corporation, sell, convey and transfer all real and personal property belonging to such company, collect all debts, compromise controversies, maintain or defend judicial proceedings, and exercise full power and authority of said company over such assets and property. Said trustees shall be severally responsible to the creditors and stockholders of such corporation to the extent of its property and effects that shall have come into their hands."

Article 1389 provides: "The existence of every corporation may be continued for three years after its dissolution from whatever cause, for the purpose of enabling those charged with the duty, to settle up its affairs.

In case a receiver is appointed by a court for this purpose, the existence of such corporation may be continued by the court so long as in its discretion it is necessary to suitably settle the affairs of such corporation."

■ We have concluded, after an exhaustive study of the authorities of this and other jurisdictions, that a majority of the trustees had authority under the above statutes to transact such business as the statutes provided. The Legislature must have known, when it enacted the foregoing statutes, that the business of corporations was being carried on by the concurrence of a majority of the directors, and, in providing that its legal existence might be continued for a period of three years and that the trustees provided for therein should act in the name of the corporation, we think their intention was that they should proceed as they had done theretofore, and did not intend that any action contemplated by them must be concurred in by all the trustees.

We must credit the legislators with knowing that quite often the unanimous agreement of all would be practically impossible, and that the settling up of the affairs would or might be prevented, thereby nullifying the benefits which the law intended.

With these facts in mind, we are of the opinion that the provisions of the statutes are sufficient to take the matter out of the general rule above mentioned, and that trustees situated as were those here could act upon a concurrence of a majority of those qualified to act.

■ The other question which we feel calls for discussion is the validity of a sale from the trustees to a corporation in which they are the principal stockholders.

There is a great divergence of opinion as to the effect of such sales in the courts of the various jurisdictions, but the weight of authority seems to be that they are only voidable for fraud or unfairness. Tenison v. Patton, 95 Tex. 293, 67 S. W. 92.

■ In the case at bar, the trial court evidently concluded that the sale was fair and free from fraud, and we think the evidence is amply sufficient to support such a conclusion.

There is evidence in the record which shows that the disposition made was the best possible, and that any other would have resulted in an assessment being made upon the stockholders of the old bank, which was prevented under the sale here made. If that be true, then stockholders, such as appellant, could not be heard to complain.

The record further shows that appellant went away, and, as he says, left the old directors to work the matters out as best they could, and raised no objection to the sale until several months after he had notice thereof, and then only when an attempt was

made to force him to pay his indebtedness, the justness of which he does not dispute.

We have examined the several assignments of error, and have decided that they should be overruled.

Finding no error in the record, the judgment of the trial court is affirmed.