Charlie **RANKIN** et al., Appellants,

v.

**J. C. KELLAM** et al., Appellees.

No. 11269.

Court of Civil Appeals of Texas.
Austin.

Feb. 24, 1965.

Rehearing Denied March 17, 1965.

George & Stewart, E. Donald McNees, Dallas, for appellants.

Clark, Thomas, Harris, Denius & Winters, Sander W. Shapiro, Austin, for appellees.

PHILLIPS, Justice.

This case is before us on an appeal from a summary judgment granted by the trial court.

The suit was originally filed by the plaintiffs below, and the appellants here, who are some of the former employees of Texas Broadcasting Corporation, in Hidalgo County, Texas. Their suit was to recover certain profit sharing funds that they allege had accrued to them during their employment with the appellee, Texas Broadcasting Corporation. Appellees, defendants below, are the Texas Broadcasting Corporation and the individual Trustees of the KTBC Profit Sharing and Incentive Trust. The case was removed to Austin after the district court in Hidalgo sustained appellees' pleas of privilege.

The undisputed facts are summarized as follows: Texas Broadcasting Corporation was organized in June 1947, to own and operate radio and television properties. In 1958, the Company acquired KRGV, a radio and television station broadcasting from Weslaco, Texas. The Company operated KRGV until November 1961, at which time it sold the station. Appellants were employees of Texas Broadcasting Corporation at Weslaco, Texas during the time the station was owned by the Texas Broadcasting Company.

In 1956 and before the Texas Broadcasting Company purchased KRGV, it voluntarily instituted a profit sharing plan for the benefit of its employees. The plan took the form of a trust with Trustees appointed by the Company to administer the plan in accordance with the terms and provisions thereof.

The Company has made contributions to the trust in accordance with the terms of the plan in each year since the inception of the plan. Employees make no contribution whatsoever. According to the terms of the trust no amounts contributed by the Company or any other assets of the trust can ever revert to the Company.

On July 1, 1958, ninety-nine employees of KRGV became employees of the Texas Broadcasting Corporation, seventy of whom were eligible for participation and did participate in the plan. Following the sale of KRGV in November of 1961, the Company had in its employ 119 employees, 95 of whom were participating in the plan.

After KRGV was acquired, the employees employed by the Company at Weslaco, including appellants, became eligible for participation and did participate, as provided, in the plan. Accordingly, accounts were set up in the names of each eligible employee, including appellants herein, and credits made to such accounts in accordance with the plan.

When each of the employees of the Company at Weslaco, including appellants, became a participant in the plan, he was given a copy of the plan. Thereafter, in accordance with the requirements of the plan, each participant was given an annual statement showing the financial condition of the plan for that fiscal year.

Prior to the sale of KRGV by the Texas Broadcasting Company an announcement was made to all employees of KRGV that the sale was contemplated and that the Company would retain the employment of those who desired to remain, however the employment would be in Austin. Only two employees of KRGV accepted the Company's offer. All of the other employees, including appellants, terminated their employment.

As stated above, a group of employees whose tenure with the Company terminated, brought this suit for what they allege is their pro rata share of the funds in the plan.

The trial court granted appellees' motion for summary judgment and denied the various motions of appellants hereinafter discussed.

We affirm the judgment of the trial court.

Appellants' first six points of error, briefed together, complain of the action of the trial court in failing to grant their motion for summary judgment and in granting appellants' in that appellants' accounts were liquidated and established and appellees failed as a matter of law to show any right to these accounts; error of the court in failing to establish that each appellant is a beneficiary cestui que trust with title to their respective accounts and that appellees, as a matter of law have failed to plead an affirmative defense or superior title to the accounts; that the pleadings before the court including the trust instrument established as a matter of law that appellee Texas Broadcasting Corporation does not have any right or title to the accounts of appellants; "other" beneficiary appellees have not as a matter of law plead or established any title to the accounts of appellants; that

Trustee appellees have not as a matter of law plead or established any right, title or interest in the accounts of the appellants.

We overrule these points. Points of error seven and eight will be discussed later in this opinion.

Section 4–2(a) of Article IV entitled "Leaving Employer's Service" is as follows:

"(a) *Before Ten Years of Service.* A Participant who leaves the service of the Employer (other than by reason of death, retirement, permanent disability, or authorized leave of absence) prior to completion of ten (10) years continuous employment subsequent to July 1, 1947, shall receive nothing."

Article IV is entitled Payments to Participants and Beneficiaries.[1]

Section (b) of Section 4–2 of Article IV entitled "after Ten Years of Service" sets out a schedule of the percentages of the fund recoverable for successive years after ten. See foot note No. 1.

Section 11–1 entitled "Employment non-contractual is as follows:

"Termination of Employment. The employer may terminate the employment of any Participant as freely and with the same effect as if this plan were not in effect."

Section 5–2(j) states:

"The Trustees shall have absolute power * * * to construe and interpret this agreement."

Section 5–2 states:

"[The Trustees] determination on all matters relating to the Plan shall be conclusive and binding upon all persons having or claiming to have any interest hereunder."

The portions of the plan quoted above raise two questions, one, the construction

---

1. Article IV entitled "Payments to Participants and Beneficiaries" is as follows:
"* * * *
"Section 4–2. *Leaving Employer's Service.*
"(a) *Before Ten Years of Service.* A Participant who leaves the service of the Employer (other than by reason of death, retirement, permanent disability, or authorized leave of absence) prior to completion of ten (10) years continuous employment subsequent to July 1, 1947, shall receive nothing.
"(b) *After Ten Years of Service.* Upon a Participant leaving the service of the Employer (other than by reason of death, retirement, permanent disability, or authorized leave of absence) after completion of ten (10) years continuous employment, he shall receive the following portion of his account, depending upon the number of years of continuous employment subsequent to July 1, 1947, completed by the Participant on June 30 next preceding his termination of employment:

| | |
|---|---|
| 10 years but less than 11 years . . . . . | none |
| 11 years but less than 12 years . . . . . | 10% |
| 12 years and each full year thereafter . . . | 20% plus 10% of each full year in excess of 12 years |

The amount to which any Participant shall be entitled should his employment be terminated under this section shall be known as his vested interest.
"Section 4–3. *Distribution of Forfeitures.* Any amounts forfeited during a fiscal year shall be entered in a separate account, or accounts, as soon as practicable after June 30 of each year, all amounts forfeited during the year shall be credited to the accounts of those who are Participants on June 30, each Participant receiving credit for that proportion of the forfeiture which the balance of his account bears to the total of all such balances of all Participants.
"Section 4–4. *Time of Distributions.* All withdrawals and distributions made under the Plan are subject to the provisions for distribution in Article VI."

of the plan as relates to the appellant employees, the other, the authority of the Trustees to interpret the plan.

With respect to the construction of the plan as it relates to appellant employees, they maintain that the requirement of ten years of service before any participation pertains only to those employed during the "regular course" of business. That when the Company sold Station KRGV terminating their employment as above described that such was a transaction "outside the regular course" of business bringing into operation Article XII of the plan entitled "Modification and Termination."[2] This Article states, among other things, that the employer may modify and amend the plan but that such power must not be exercised retroactively so as to impair the rights of participants insofar as they relate to past contributions to the trust, nor shall any such amendment divest any participating employee of any credit theretofore entered to his account. This Article further

states that the Employer may discontinue the plan by giving the required notice or the plan may be discontinued upon other contingencies including that of merger with another corporation not assuming the obligation. Should such come to pass, the plan provides that each participant then an employee shall be assigned his full account whereupon the Employer and Trustees shall be fully acquitted and discharged from any further duties or liabilities to those particular participants. Appellants cite cases that state when the legal title merges with the equitable title the trust terminates. From this they argue that in the "regular course of business" the legal title merges with the equitable title after ten years due to the provisions of Sec. 4-2(a), supra, however that the above mentioned Article XII of the Plan provides for such a merger and termination of the trust upon contingencies "outside the regular course of business." That in view of the fact that the plan provides that each of the accounts of

2. Article XII entitled "Modification and Termination" is as follows:

"Section 12-1. The Employer reserves the power to change, amend, modify, or alter any of the provisions of this Plan at any time, or to transfer the Fund or part thereof to a new Trust for the Participants' benefit, except that said power to change, amend, modify, or alter shall have no application to Section 3-3 hereof and shall not be exercised retroactively to alter or impair the rights of Participants or their beneficiaries, insofar as they relate to past contributions to the Trust; nor shall any such amendment vest in the Employer any right, title, or interest in and to the assets of the Trust, divest any participating employee of any credit theretofore entered to his account, or permit any part of the assets of the Trust to be used for or diverted to purposes other than for the exclusive benefit of participating employees. The Trustees shall in writing notify all Participants of any change, modification, or alteration in the provisions of this Plan accomplished in accordance with this Section. No amendment shall require approval by the shareholders of the Employer.

"The Employer may discontinue this Plan by giving written notice to the Trus-

tees at any time. In case the Employer decides to discontinue this Plan (not substituting a new Trust therefor), or in the case of the dissolution of the corporation, or in case of adjudication of the corporation as a bankrupt, or the loss of the corporate existence of the corporation, or a merger into or with another corporation or corporations which shall not assume the obligations of this Plan, the Trustees shall assign to each Participant who is then an employee of the Employer his full account, whereupon the Employer and the Trustees shall be fully acquitted and discharged from any further duties or liability to those particular Participants.

"Section 12-2. If the Employer shall at any time fail to make a contribution in accordance with the terms and provisions of Article III hereof without discontinuing the Trust and without securing approval of the District Director of Internal Revenue, the company shall be deemed to have discontinued contributions to the Trust and the forfeiture provisions of Section 4-2 shall not apply; and any Participant leaving the service of the company during such period of discontinued contributions shall be entitled to receive one hundred per cent (100%) of his interest in the Fund."

the appellants were liquidated and determined as of June 30 of each year,[3] they are due the amounts prayed for.

Appellants contend that in view of the provisions outlined above the accounts of participants were "irrevocably settled." This is true only to the extent that according to the plan they could never revert to the Company, but they were not so settled in the sense that the full amount of the account in a participant's name was vested when credited. Only that portion of each account was vested which complied with the provisions of Article IV which requires the 10 year service before any vesting occurs. Then follows a table setting out the percentage of the fund allocable for years of service succeeding ten. This section specifically provides that:

> "The amount to which any participant shall be entitled should his employment be terminated under this Section shall be known as his vested interest."

In Sec. 12–2 of Article XII the forfeiture provision of Sec. 4–2 is mentioned and held not to apply to any participant leaving the service of the Company where the Employer has failed to make contributions as required by the plan without discontinuing the trust. By specifically stating in what situation such forfeiture provision does not apply coupled with the fact that such exception to the forfeiture provision is included in a section of Article XII evokes the Expressio unius rule. See 53 T.J.2d, Section 142, p. 205.

■ Upon becoming a participant, an employee becomes a contingent beneficiary of the trust to the extent of the value of his account. This occurs after one year of service. The amount in his account which vests upon his termination of employment, is however, determined by the vesting provisions of Article IV. While no amount in the fund can revert to the Employer, the plan provides that the unvested portion of an account forfeited by reason of early termination of employment is distributed ratably to the accounts of the remaining participants. Where a participant, such as each of the appellants, leaves the services of the Employer for reasons other than death, retirement, or disability or leave of absence, and who has been continuously employed for less than 10 years, nothing has vested in him. Appellants therefore, who were with the Company only three years are not entitled to any of the funds in question. Any other construction of this plan would be strained and artificial.

As stated above, in addition to the construction of the plan in issue, we come to the question of the authority of the Trustees to interpret the plan. 38 Tex.Jur.2d, Master and Servant, Section 32, is as follows:

> "A plan for employees' pensions, disability benefits, or death benefits that is maintained by the employer without exacting contributions from the employees is a charitable enterprise in its nature. Therefore, under such a plan, the terms and conditions on which employees shall be entitled to participate,

3. Sections 2–2 and 2–3 read as follows:
  "Section 2–2. *Participants.* All employees who have or will have, completed one year of continuous service with the Employer shall become eligible to participate under this Plan in the contribution for the year in which they so qualify and in the contribution for each succeeding year during the period of their continuous employment with the Employer. All such employees are herein sometimes called 'Participating Employees.'

  "Section 2–3. Determination of the right and basis of participating in each year's contribution shall be made annually as of the 30th day of June of each such year, commencing June 30, 1956, and all persons qualifying during such year shall thereupon participate in the benefits provided hereunder upon the pro rata basis to which he or she is entitled according to the time of qualification during the year."

as prescribed by the employer, conclusively govern the determination of a suit by the employee or his personal representative to recover from the fund. These terms and conditions may include a provision that an extra-forum determination of any claim to participate in the fund shall be final and conclusive, and an employee has then no right to complain of its decision in the absence of fraud or bad faith on the part of those who administer the fund. In any event, the construction placed on the rules regulating the disposition of the fund will be adopted by the court unless that construction should conflict with law and public policy." Citing cases.

The Trustees have interpreted the plan so as to require ten years of service before any employee is entitled to any portion of the fund. In Aston v. Magnolia Petroleum Co., Tex.Civ.App., 241 S.W.2d 306, writ refused, Judge Culver then speaking for the Ft. Worth Court of Civil Appeals, held that where an employee's benefit fund is established by the employer with no contributions made by the employees, the decisions of the authorized committee regarding the amounts of benefits due employees' beneficiaries is final and binding on all parties and is not subject to attack in the courts in the absence of actual fraud and bad faith. Also see cases cited in the above-mentioned section of Tex.Jur.2d.

■ All parties to the suit at bar agree that the plan in question is subject to the provisions of the Texas Trust Act, Art. 7425b-1 et seq., Vernon's Ann.Civ.St. While the abovementioned cases cited make no mention of whether the plans outlined therein were subject to the Texas Trust Act, we have neither been shown any reason, nor have we been able to find one that would preclude the rule in the Aston case, above, from being applied here. Therefore, we hold that the Trustees had

the authority to interpret the Act as they have done.

Appellants' seventh and eighth points of error respectively are that of the trial court in denying their motion for discovery and production of documents under Rule 167 and the error of the court in sustaining the objection of appellees to certain interrogatories submitted under Rule 168.

We overrule these points.

■ Nowhere in their brief or in their oral argument before this Court do appellants contend that any fact issues were to be determined by the trial court. While they assign error to the courts denying their motion for discovery and production of documents and the error of the court in sustaining appellees' objections to certain interrogatories submitted by them, we are in no way appraised of the purpose of the information sought, in what manner they have been damaged by the court's action or in what way the trial court abused its discretion in the matter.

Inasmuch as we hold that the only issue before the trial court was an issue of law and that the court correctly ruled on this issue we sustain his summary judgment and affirm this case.

Affirmed.

HUGHES, Justice (dissenting).

The purpose of the Profit-Sharing and Incentive Plan before us is stated to be:

*"Purpose*

"The purpose of this Plan is to help employees provide security for their retirement and to provide a means for the sharing with employees of profits of the Employer."

"Employees" in the Plan are defined by it to mean "all active officers of the Corporation and all employees receiving compensation for their services."

Section 2–2 of the Plan provides:

"Section 2–2. *Participants.* All employees who have or will have, completed one year of continuous service with the Employer shall become eligible to participate under this Plan in the contribution for the year in which they so qualify and in the contribution for each succeeding year during the period of their continuous employment with the Employer. All such employees are herein sometimes called 'Participating Employees.'"

The trustees of the Plan are appointed by the Board of Directors of the Corporation.

The Plan provides regarding the duties and authority of the trustees, in part, as follows:

"The Trustees shall serve until their respective successors are appointed, and shall have all powers necessary or appropriate to carry out the functions herein designated and otherwise to administer the Plan and to interpret it, and their determination on all matters relating to the Plan shall be conclusive and binding upon all persons having or claiming to have any interest hereunder.

\*   \*   \*   \*   \*   \*

"(b) Any action taken by a Trustee or Trustees less than a majority, or by any other person or persons appointed as an agent or agents of the Trustees, as provided for in this agreement, shall constitute action by the Trustees, and such action shall be binding upon the Trust the same as if all the Trustees had joined therein.

"(c) Nothing in this agreement shall restrict the rights of an individual Trustee who is also an employee from being entitled to participate in the benefits of this agreement, or restrict his rights with respect to any funds or cash to be used to or for his benefit.

However, no individual Trustee shall have any right to vote or decide upon any matter relating to himself individually, or to his particular benefits as a participant hereunder, but any such matter shall be voted or decided upon exclusively by the other Trustees."

Section 4–2 of the Plan provides, in part:

"Section 4–2. *Leaving Employer's Service.*

"(a) *Before Ten Years' of Service.* A Participant who leaves the service of the Employer (other than by reason of death, retirement, permanent disability, or authorized leave of absence) prior to completion of ten (10) years continuous employment subsequent to July 1, 1947, shall receive nothing."

Section 4–3 of the Plan provides:

"Section 4–3. *Distribution of Forfeitures.* Any amounts forfeited during a fiscal year shall be entered in a separate account, or accounts, as soon as practicable after June 30 of each year, all amounts forfeited during the year shall be credited to the accounts of those who are Participants on said June 30, each Participant receiving credit for that proportion of the forfeiture which the balance of his account bears to the total of all such balances of all Participants."

In Section 5–2, paragraph (i) of the Plan, it is provided:

"(1) Except as herein otherwise provided, the Trustees shall have all the rights, powers, privileges, and duties, and shall be subject to all the provisions, conditions, and limitations contained in the Texas Trust Act, as said Act now exists or may from time to time be amended, or any similar act which may from time to time be applicable to trusts administered in the State where this Trust is administered."

The record shows that the following accounts of the named employees have been forfeited by the trustees of the Plan:

"Charles D. Rankin — $2,772.31
Roland E. Schweer — 2,778.24
Mildred M. Graham — 1,079.24
Leigh Cardwell — 2,009.84
Pat Hales — 1,165.51
Wray Post — 1,123.94
Frances Hartwig — 1,695.33
William T. Martin — 2,438.97
Daniel E. McKenna — 1,463.81
Margaret Garrett — 1,285.78
Dora Ziebell — 1,245.72
Lewis Hartwig — 2,300.11
Jacque Elliott — 618.74
John Roark — 1,933.03
Timoteo Jiminez — 730.51
Waylan Lee Johnston — 1,513.06
Larry Taylor — 211.06
Jose A. Gallardo — 572.15
E. de la Cruz — 1,130.20
Hank Page — 1,971.34
Edward Badeaux — 1,662.81
Gerald W. Whitaker — 652.98
Sallye Jones — 1,508.45
Fran Page — 503.79
Virgil Jorgensen — 1,297.16
Jose Rocha — 206.42
Arnold Walker — 541.56
Alex Ramirez — 1,060.84
Romeo Escobar — 434.58
Leonel Adams — 368.53
T. Marshall Weaver — 1,780.20
F. L. Soderquist — 866.42
Frances Cohrs — 357.27
C. H. Rollie Rowlands
    (Rollie Rosslando) — 154.36
Gene Riethmeyer — 355.49
Connie Houghland — 169.23
W. L. McCormick — 307.58
Donald Houghland — 987.93
Vincent Neuhaus — 142.04"

These employees had been employed by the Corporation for about three years or less.

There were originally five trustees and it appears that the number of trustees has remained constant but that their identities have changed. Of the five trustees who forfeited the above accounts, four were officers or employees of the Corporation and hence will personally benefit from the forfeitures of their coemployees' accounts.

Appellees, relying upon the provision in the Plan that the determination of the trustees on all matters relating to it shall be conclusive, make this statement in their brief.

> "Thus, even if another interpretation of the plan were feasible—and we think the plan is subject only to the interpretation that Appellants are entitled to no payments—the interpretation placed on the plan by the Trustees is binding. Appellants, therefore, have no grounds for recovery."

It is my opinion that the action of the trustees in forfeiting the accounts of appellants is void for these reasons:

(1) the trustees, except one, acted on a matter which was to their "particular benefits as a participant" in violation of the specific terms of the Plan;

(2) the trustees' action is against public policy.

This latter reason is self evident, however, I wish to quote from Patton v. Babson Statistical Organization, Inc., 259 Mass. 424, 156 N.E. 534, by the Supreme Judicial Court of Massachusetts because it concerns a profit-sharing or deferred salary plan. The plan provided that, "If any question arises as to the interpretation or application of any feature of the plan, the decision of the president shall be final." In holding this provision invalid the Court approved the following language from Brocklehurst & Potter Co. v. Marsch, 225 Mass. 3, 113 N.E. 646:

> "It would be a travesty upon all ideas of judicial propriety or of judicial work for a man to be an arbitrator to settle the amount of his own liability. It is contrary to natural right and fundamental principles of the common law for one to judge his own cause."

This brings me to a discussion of the fact that one trustee was not disqualified by interest and that the Plan makes the action of one trustee the action of all.

The Plan is made subject to the provisions of the Texas Trust Act. Such Act, in Art. 7425b–18, V.A.C.S., provides in part:

"Unless it is otherwise provided by the trust instrument, or an amendment thereof, or by court order:

"A. Any power vested in three or more trustees may be exercised by a majority of such trustees; * * *."

The general rule is that trustees of private trusts must all join in an action unless by statute or the terms of an instrument a majority of the trustees is authorized to act. Hart v. First State Bank of Seminole, 24 S.W.2d 480, El Paso C.C.A., writ ref.

I construe the above statute as authorizing boards of three or more trustees to act by a majority where the trust instrument does not require unanimity. The granting of affirmative statutory authority to act by a majority under such circumstances is, under well established rules of statutory construction, a negation of authority for trustees, three or more, to act by less than a majority. In my opinion, one qualified trustee was not authorized to act for all trustees in this matter.

Appellees, and the Court, treat the Plan as a charitable trust. In this, I believe they err. It will come as a shock, I feel sure, to some of the employees or officers of this Corporation to learn that they, by participating in this Plan, are the recipients of charity.

It is my opinion that payments under the Plan are compensation.[1] No taxes thereon are paid by the Employer. Federal taxes are paid by the employees on payments received under the Plan. The record demonstrates that the Plan inures to the benefit of Employer and Employee.

From a letter from the Chairman of the Board of Trustees of this Corporation to participants in the Plan, I quote the concluding sentence:

"For the Company which derives the benefit of your loyal and dedicated service, I thank you."

See Annotation on this subject in 81 A.L.R.2d p. 1070.

It is not established as a matter of law, in my opinion, that appellants left the employ of the Corporation. If the termination of their service with the Corporation was involuntary and without fault on their part, then, under the following authorities, they did not leave their employment within the meaning of the Plan. Muesling v. International Ry. Co., 85 Misc. 309, 147 N.Y.S. 177, Supreme Court of New York, Gardner v. Metropolitan Life Ins. Co., 225 Mass. 439, 114 N.E. 717, Supreme Judicial Court of Massachusetts. See annotation on this subject in 81 A.L.R.2d p. 1078, et seq.

Appellants had worked for this Employer for three years or less. Some had credited to their accounts more than $2500.00. Appellees concede that had these employees worked just short of ten years and even though their accounts might approach $10,000.00, yet, under the circumstances occurring here, they would lose it all.

The Plan, magnanimous and generous as it is, should not be construed to deal such a crushing blow to the hopes, dreams and expectations of faithful employees if within the limits of reason and law it can be avoided.

The very least that these employees are entitled to is that their claims be determined by trustees who are free from conflicting self interest. I would reverse and remand this case for appropriate proceedings in equity.

I respectfully dissent.

---

1. This is the holding under similar facts in Lee v. Lee, 112 Tex. 392, 247 S.W.

828, followed in Herring v. Blakeley, 385 S.W.2d 843, Tex.Sup.