STATE EX REL. JOHNSON, Respondent, vs. NYE, Appellant.

*February 22—March 12, 1912.*

*Constitutional law: Officers: Members of assembly: Eligibility to office whose salary is increased during their term: Grain commissioners: Appointment: Time: Directory statute: Recommendation: Incompatible offices: Vacating one by accepting other: Qualifications.*

1. By ch. 440, Laws of 1909, the salary of grain commissioner was fixed at $200 per month, $100 of which was payable out of the state treasury and $100 out of the funds or fees collected "after all legal obligations, including any moneys advanced by the state, have been fully paid." By ch. 458, Laws of 1911, the same monthly stipend was made payable wholly out of the funds or fees collected, and the words above quoted were omitted. *Held,* that the salary was not thereby increased so as to render a member of the legislature of 1911 ineligible to the office of grain commissioner, under sec. 12, art. IV, Const.

2. The scope of the law in this respect cannot be broadened or varied, or an increase thereby in the emoluments of the office

State ex rel. Johnson v. Nye, 148 Wis. 659.

be shown, by allegations in pleadings, such as, for example, an allegation that under the act of 1911 payment of the salary is more secure and certain, or that under the act of 1909 there might be times when the amount of funds or fees collected would not be sufficient to pay that part of the salary which was payable therefrom.

3. The provisions of said sec. 12, art. IV, Const., should be narrowly construed in favor of eligibility; and ineligibility should not be declared upon grounds resting in mere speculation or conjecture.

4. A statutory requirement as to the time of making an appointment to a public office is directory merely; and the governor may legally appoint a state grain commissioner in October, although by law he should have made such appointment in January preceding.

5. The provision in the statute creating a grain commission (sec. 2, ch. 19, Laws of 1905), to the effect that the governor before making an appointment thereto shall request the board of trade of the city of Superior to recommend a person for the position, is satisfied where such recommendation has been in fact made without request, even though the appointment is not made until nine months afterward.

6. The board of trade having made one recommendation for the position, no further action by the governor in that behalf was made necessary by a subsequent notice from the board of trade that if the person so recommended was not satisfactory it would like the opportunity to make another recommendation.

7. Where two offices are incompatible the acceptance of one by the incumbent of the other *ipso facto* vacates such other, at least in cases where such incumbent can vacate the first office by his own act.

8. Under secs. 961, 962, Stats. (1898), a member of the assembly can resign and the office becomes vacant by his own act; and acceptance of an incompatible office has the same effect.

[9. Whether the office of member of the assembly and that of grain commissioner are incompatible, not determined.]

10. The alleged fact that a person appointed to the office of grain commissioner is without experience to enable him to properly judge and grade grain, does not affect his right to hold the office.

Appeal from an order of the circuit court for Douglas county: Frank A. Ross, Circuit Judge. *Reversed.*

This is an action of *quo warranto* brought to oust the defendant from the office of member of the grain and warehouse

commission of Wisconsin.    The complaint alleges in sub-
stance:

That on the 9th day of July, 1906, to fill a vacancy then ex-
isting, the relator, *Henry A. Johnson,* was duly appointed by
the governor of Wisconsin to the office of commissioner of the
grain and warehouse commission for Wisconsin (hereinafter
called grain commissioner) under ch. 19 of the Laws of 1905
and acts amendatory thereof and supplemental thereto, and
immediately after his appointment and in pursuance thereof
he duly qualified as such officer, entered upon the duties
thereof, and through successive appointments thereto has con-
tinued to occupy and exercise the duties of such office from
said 9th day of July, 1906, up to and including the 23d day
of October, 1911; that he was last appointed to said office in
the month of January, 1910, for the year ending the first
Monday in February, 1911, and until his successor should
be duly appointed and qualified, and that the relator has been
since said 9th day of July, 1906, and now is, entitled to said
office.

That during the year last past and up to and including the
23d day of October, 1911, said grain and warehouse commis-
sion for Wisconsin (hereinafter called the grain commis-
sion) was composed of the relator, *Henry A. Johnson,* Will-
iam H. Crumpton, and James A. Kernan; that pursuant to
sec. 1747—2, Stats. (Laws of 1905, ch. 19), the relator has
received all his appointments as such grain commissioner upon
recommendation of the board of trade of the city of Superior;
that the said James A. Kernan was appointed and now holds
his office as such grain commissioner pursuant to the recom-
mendation of the governor of North Dakota; and that while
said William H. Crumpton was not recommended by the gov-
ernor of New York for the reason that owing to a spirited
contest between candidates the governor of New York de-
clined to recommend any one, yet his appointment as such
grain commissioner was accredited to New York.

That in the month of October, 1911, and, as affiant is in-

formed and believes, on or about the 7th day of October, 1911, the governor of Wisconsin undertook to appoint, and in form did appoint, the defendant, *Ray J. Nye,* to said office of grain commissioner to succeed said relator, and within a few days thereafter and in October, 1911, said defendant attempted to qualify therein.

· That at the biennial general election held the 8th day of November, 1910, said defendant, *Ray J. Nye,* was duly elected assemblyman from the Second assembly district of Douglas county, Wisconsin, for the ensuing two-year term; that pursuant to said election and immediately thereafter the defendant duly qualified as such assemblyman and attended and took part as a member of the legislature from said district during the entire biennial session held in 1911; that by virtue of said election and qualification he ever since said election has been and now is a member of the legislature of Wisconsin.

That in marketing, handling, and housing of grain tributary to the head of Lake Superior, the city of Superior in Wisconsin, and the city of Duluth in Minnesota, come in direct competition, and the facilities for marketing, handling, and housing grain in these two cities are very similar; that the yearly crop of grain grown in territory tributary to and which can be handled at the head of Lake Superior varies much in quantity, depending upon the favorableness of the season and other varying conditions; that in inspecting and weighing grain the grain commissioners of Wisconsin come in direct competition with the commissioners of Minnesota who possess similar duties and powers, in consequence of which it is impracticable and impossible for the grain commissioners of Wisconsin to exact, charge, or collect fees for inspecting and weighing grain which are substantially in excess of the fees charged by the Minnesota commission; that such competition is keen and has at times threatened to greatly reduce the amount of fees which can be collected under ch. 19 of the

Laws of 1905 and amendments thereto; that owing to all these conditions there have been times, and the relator verily believes there will be times in the future, when the amount of fees which can be collected by said grain commission of Wisconsin was not, and will not be, sufficient to meet all the obligations of said grain commission; that in June, 1911, the time ch. 458, Laws of 1911, was enacted, there was a lack of funds in the treasury to meet the obligations of the grain commission, and there was no money out of which the second hundred dollars of the grain commissioners' monthly salaries (being that part theretofore payable out of fees after all legal obligations had been paid) could be paid for the months of March, April, May, and June, 1911, and the grain commissioners had then received only $100 salary per month for the aforesaid months; but pursuant to ch. 458, Laws of 1911, $5,742.47 was transferred from the general fund to the "Wisconsin grain and warehouse commission fund," and out of the fund so transferred the salaries of the commissioners for said months were, early in July, 1911, paid in full; that said ch. 458 makes the present arrangement for payment of salary of grain commissioners surer and more remunerative than the law of payment as it stood prior to the enactment of said chapter, and under conditions that are liable to confront the commission at any time the salaries received by the commissioners will have been increased by said ch. 458.

That said defendant was in January, 1911, duly constituted and appointed chairman of the finance committee of the assembly, accepted his appointment, and ever since has been and now is chairman of said committee. On July 8, 1911, pursuant to ch. 553, Laws of 1911, the defendant, by virtue of being chairman of the finance committee of the assembly, became ex officio member of the state board of public affairs, and ever since said 8th day of July, 1911, has been a member of said board. At the first meeting of said board, held, as relator verily believes, in July, 1911, the defendant was ap-

pointed secretary of said board. That said defendant was at the time of his appointment as grain commissioner, ever since has been, and now is engaged in the duties of the state board of public affairs; that the office of assemblyman held by defendant, and the office of member of the state board of public affairs, held by defendant as aforesaid, are each incompatible with the office of grain commissioner.

That sec. 2 of ch. 19, Laws of 1905, in providing that before making such appointment the governor shall request the governors of North Dakota and New York, and the board of trade of Superior, respectively, to recommend a person or persons for the appointment upon such commission, was enacted with a design to prevent appointments of such grain commissioners for political motives and to secure grain commissioners who are expert grain men, and a grain commission equally poised between buyer, seller, and middleman; that the governor of Wisconsin did not before appointing said defendant grain commissioners, nor at any time, request the board of trade of Superior nor the governors of North Dakota and New York to recommend a person or persons for the appointment; that the board of trade of Superior in January, 1911, by unanimous vote of its directors, recommended that *Henry A. Johnson,* relator, be re-appointed to succeed himself; that when no appointment was made in January, 1911, the board of trade, through its president, notified the governor on or about June 24, 1911, that if for any reason *Henry A. Johnson* was unsatisfactory to him, the board of trade would like the opportunity of recommending some other person, but relator verily believes that the governor completely ignored said request and said board of trade was never given an opportunity to recommend another person; that pursuant to ch. 440, Laws of 1909, it was the duty of the governor to make the appointment of a successor to relator in January, 1911, and in conformity to the spirit of the law it was his duty to appoint a person who is an experienced judge of grain, and although de-

fendant is without experience which enables him to properly judge and grade grain, and is without the necessary qualifications to enable him to properly fill such office, the governor refused to appoint a grain commissioner in January because to subserve political ends alone he wanted to appoint defendant, but did not want to appoint him until after the legislative session had adjourned, and for that reason withheld making such appointment until October, 1911.

That because of the foregoing the defendant was at the time he was so appointed grain commissioner, ever since has been, and now is ineligible to hold said office, and the governor had no power to appoint said defendant in the manner and at the time and under the conditions he so appointed him.

That on the 23d day of October, 1911, defendant demanded of relator that he turn over the books and papers belonging to said office of grain commissioner, and that he be allowed to occupy said office; that the relator then and there told defendant that he was not entitled to said office and that he, relator, was entitled to hold said office and that he would not voluntarily surrender said office, and then and there protested against the defendant occupying said office, but that defendant then and there on said 23d day of October, 1911, without relator's consent and against his protests, unlawfully usurped said office and has ever since continuously unlawfully usurped said office, and has, since the 23d day of October, 1911, withheld and still withholds the same and the fees and emoluments thereof from relator, and on the 1st day of November, 1911, ordered the relator to leave the office rooms occupied by said grain commission.

That upon request by complainant to the attorney general to bring suit to oust said *Ray J. Nye* from said office, said attorney general refused and still refuses so to do.

Judgment was demanded that the defendant be adjudged guilty of usurping, intruding into, and unlawfully holding said office, that he be excluded therefrom and the privileges

thereof, and that the relator be entitled to have, hold, and exercise said office, and to the fees and emoluments thereof, and that the relator recover the costs of this action, and for such further and other relief as the court may deem just.

The defendant demurred to the complaint for want of facts sufficient to constitute a cause of action. From an order overruling the demurrer this appeal was taken.

W. R. Foley, for the appellant.

For the respondent the cause was submitted on the brief of H. V. Gard.

KERWIN, J. The questions before us arise upon demurrer to the complaint as appears from the statement of facts.

The grain and warehouse commission of Wisconsin was created by ch. 19, Laws of 1905, amended by ch. 12 of the special session of 1905, and again amended by ch. 440, Laws of 1909, and by ch. 458, Laws of 1911. It is the contention of the appellant that the complaint fails to state a cause of action, therefore that the demurrer should have been sustained. The questions involving the sufficiency of the complaint will be treated in their order.

1. It is claimed by the plaintiff that the emoluments of the office of grain commissioner were increased while defendant was a member of the assembly. The constitutional provision invoked upon this contention reads:

"No member of the legislature shall, during the term for which he was elected, be appointed or elected to any civil office in the state which shall have been created, or the emoluments of which shall have been increased, during the term for which he was elected." Sec. 12, art. IV, Const.

Under the original act, Laws of 1905, the commissioners received a salary of $100 per month, payable out of the state treasury in the same manner as other salaries were paid. In 1909 the legislature amended the law as to salaries and provided that each member should receive a salary of $200 per

month, $100 of which should be payable out of the state treasury monthly in the same manner as other salaries are paid, and making appropriation therefor; the other $100 to be paid monthly out of the funds or fees collected "after all legal obligations, including any moneys heretofore or hereafter advanced by the state, have been fully paid." Ch. 440, Laws of 1909. In June, 1911, the law was again amended so as to provide that each commissioner should receive a salary of $200 per month out of the funds or fees collected under the provisions of the act. Ch. 458, Laws of 1911.

It is argued by counsel for plaintiff that the law of 1911 increases the emoluments of the office. We fail to see how. The salary, $200 per month, remains the same, and the only change is in the manner of payment. Under the 1909 law $100 was paid out of the state treasury, and the other hundred out of the fees or funds collected; while under the law of 1911 the whole $200 is paid out of the fees or funds collected. But it is argued that the payment under the 1911 law is more secure and certain than under the 1909 law. True, under the 1909 law the $100 is paid out of fees or funds after other obligations are paid, while such a restriction on the fund does not appear in the 1911 law. But under the 1909 law the first $100 is concededly safe, and only the other hundred dollars could be jeopardized in case of lack of funds, while under the 1911 law, in case of lack of funds, the whole salary might be jeopardized, depending upon the extent of the shortage.

But no facts are pleaded showing with any degree of certainty that the law of 1911 increased the emoluments of the office, and it is obvious in the nature of things that no facts could be pleaded showing increase in emoluments by the 1911 law. The scope of the laws touching the subject cannot be broadened or varied by allegations in pleadings.

The complaint alleges that in June, 1911, there was a lack of funds in the treasury to meet the obligations of the com-

mission and pay the second $100 of the grain commis-
sioners' salaries for the months of March, April, May, and
June. But it appears the shortage was only temporary, since
a fund of $5,742.47 was transferred to the grain and ware-
house commission fund, the same being an amount previously
paid into the general fund and representing a profit to the
state over and above the necessary expense of the commission,
and out of this fund the salaries for March, April, May, and
June were paid in full. The defendant received no benefit
from this fund. True, the complaint alleges that relator
*verily believes* that there will be times in the future when the
amount of fees that can be collected will not be sufficient to
meet all the obligations of the grain commission. This alle-
gation is not even upon information and belief, only upon
belief. Plaintiff further relies upon the allegations of the
complaint to the effect that ch. 458 of the Laws of 1911 makes
the present arrangement for payment of salary surer, prefer-
able, and more remunerative than the prior law. These are
conclusions not warranted by the law, and of course cannot
change or modify the scope or purpose of the law. The de-
murrer admits only facts well pleaded, not conclusions. No
change was made in amount of salary or time of payment in
1911; there was no increase of emoluments of the office in
1911.

Contention is made that under the law as it stood prior to
1911 a situation might arise and conditions be such that there
would not be money enough to pay the $100 payable out of
fees or funds. A similar conjecture might be indulged as to
lack of funds to pay out of fees or funds under the law of
1911 and even the $100 secured by the law of 1909 lost.
This line of argument involves mere speculation and conjec-
ture. The constitutional provision under consideration
should be narrowly construed in favor of eligibility. *State
ex rel. Ryan v. Boyd,* 21 Wis. 209; 29 Cyc. 1381, 1383, 1427;

*U. S. v. Langston,* 118 U. S. 389, 6 Sup. Ct. 1185; *Riggs v. Brewer,* 64 Ala. 282.

We think under the law and the allegations of the complaint it cannot be said that the emoluments of the office were increased in 1911.

2. It is further contended that the appointment was void because not made in January, 1911. Ch. 440, Laws of 1909, provides:

"The commissioners heretofore appointed under this act shall hold their offices until the first Monday in February, 1910, and until their successors are appointed and qualified. On or before the first Monday in February, 1910, the governor shall appoint three commissioners; the term of one such appointee shall terminate on the first Monday in February, 1911; the term of the second such appointee shall terminate on the first Monday in February, 1912; and the term of the third such appointee shall terminate on the first Monday in February, 1913. In January, 1911, and annually thereafter there shall be appointed in the same manner one commissioner for the term of three years from the first Monday in February of such year. Each commissioner so appointed shall hold his office until his successor is appointed and qualified. And in case of any vacancy in such commission, the governor shall fill the vacancy for the unexpired term so made vacant in the manner as original appointments are required to be made."

Counsel cites Mechem on Public Officers and from courts other than Wisconsin on this point, but we think the decisions of this court settle the contention against the plaintiff.

It is true, as appears from the complaint, that the defendant was not appointed in January, nor until October, 1911. But under the decisions of this court we think the statute is directory, not mandatory, and that the appointment made after January is a valid appointment. *State ex rel. Cothren v. Lean,* 9 Wis. 279; *Application of Clark,* 135 Wis. 437, 115 N. W. 387.

It is also insisted under this head that the appointment was

void because no request was made to the board of trade for recommendation. But the request was waived because recommendation had been made without it. The recommendation having been made by the board of trade without request by the governor, such request was dispensed with. Nor is it material that a long time elapsed after the recommendation before the appointment was made. The board having made one recommendation, although without request from the governor, the law providing for request was satisfied, and no further action by the governor in that behalf was necessary, notwithstanding that the board did in June notify the governor that if the relator, whom the board recommended, was not satisfactory, it would like an opportunity to make another recommendation.

3. It is also claimed that the offices of member of assembly and grain commissioner are incompatible. Without determining whether they are incompatible or not, it is sufficient to say that under well established principles of law the acceptance of the latter office, if the offices are incompatible, vacated the former. *State v. Jones,* 130 Wis. 572, 110 N. W. 431; 29 Cyc. 1382 and cases cited; Throop, Public Officers, §§ 30–40; Mechem, Public Officers, §§ 422–424.

Counsel for respondent, however, makes some claim that the defendant could not of his own free will vacate his first office by the acceptance of a second, citing Mechem on Public Officers, §§ 419–421.

Sec. 419 of Mechem on Public Officers states the general proposition that it is contrary to the policy of the law that the same individual should undertake to perform inconsistent and incompatible duties, and sec. 420 lays down the rule that, where the offices are incompatible, the acceptance of the latter *ipso facto* absolutely vacates the former and terminates the title of the incumbent thereto without any other act or proceeding. And sec. 421 simply makes the exception to the general rule in cases where the officer cannot vacate the first

State ex.rel. Johnson v. Nye, 148 Wis. 659.

office by his own act.    It is clear that the instant case does not come within this exception.

Our statute, secs. 961 and 962, confers upon such officers the right to resign.    Sec. 961 provides how resignation shall be made, and only requires the action of the officer, and sec. 962 provides that every office shall become vacant by resignation.    So in the instant case the defendant had the absolute right to resign, therefore his acceptance of the office of grain commissioner, assuming that it was incompatible with the office of member of assembly, absolutely vacated the office of member of assembly.

Point is also made that the defendant was ineligible because of lack of personal qualifications.    It is alleged in the complaint that it was the duty of the governor to appoint a person who is an experienced judge of grain; that defendant is without such experience which enables him to properly judge and grade grain and is without the necessary qualifications to enable him to properly fill the office.    We think this contention is without merit and shall spend no time in discussing it.

It follows, therefore, that the complaint fails to state a cause of action, and that the demurrer thereto should have been sustained.

*By the Court.*—The order overruling the demurrer is reversed, and the cause remanded with instructions to the court below to sustain the demurrer to the complaint.