**J.E. "Buster" BROWN, Relator,**

v.

**George W. STRAKE, Jr., Chairman of the State Republican Executive Committee, Respondent.**

**No. 01–86–0060–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 10, 1986.

Robert L. Blumenthal, Tex Lezar, Carrington, Coleman, Sloman & Blumenthal, Dallas, for relator.

Leonard Davis Potter, Guinn, Minton, Roberts & Davis, Tyler, Jim Mattox, Atty. Gen., Mary F. Keller, Executive Asst. Atty. Gen. for Litigation, J. Patrick Wiseman, Chief, State & County Affairs, W. Robert Gray, Robert L. Lemons, Asst. Attys. Gen., Austin, for respondent.

Randall Buck Wood, Ray, Wood & Fine, Austin, amicus curiae.

Roy Barrera, Jr., Boerne, John Roach, Plano, Ed Walsh, Republican Candidates for the Office of Atty. Gen., Round Rock, for parties in interest.

Before DUGGAN, LEVY and DUNN, JJ.

## OPINION

DUGGAN, Justice.

Relator J.E. "Buster" Brown seeks an original writ of mandamus compelling respondent George W. Strake, Chairman of the State Republican Executive Committee, to accept relator's application to have his name placed upon the official ballot of the general primary election of the Republican party to be held May 3, 1986.

Respondent has refused to accept relator's application to have his name placed on the ballot for the office of attorney gener-

al. He has notified the relator that relator is ineligible, based on the Texas constitutional prohibition against a member of the Texas Legislature being eligible to hold any office of profit for which the emoluments were increased during the term for which the legislator was elected.

Relator was a member of the 69th Legislature as a result of his election as Senator for the 17th Senatorial District at the General Election of November 6, 1984. His term expires in January 1989.

On May 27, 1985, the 69th Legislature passed a General Appropriations Act for the biennium beginning September 1, 1985, and ending August 31, 1987. This act increased salaries across-the-board for state employees, including those in the attorney general's office. The act provides:

Agencies having a "SCHEDULE OF EXEMPT POSITIONS" following their appropriation may expend funds to employ those positions designated as exempt at the rate of 103% of the rate shown for fiscal year 1986 and 103% of the adjusted 1986 rate for fiscal year 1987.

General Appropriations Act, ch. 980, art. 5, sec. 2(b), 1985 Tex.Sess.Law Serv. 7284, 7758 (Vernon). Section 94 of the same act further provides:

If a member of the 69th Legislature is elected to a civil office of profit under this state, the emoluments of which are established under this Act, then effective on the first day of the term of the civil office to which the member is elected, the emoluments of the office are reduced to a level equal to the level of emoluments in effect on January 1, 1985.

1985 Tex.Sess.Law Serv. at 7797.

Respondent's refusal to put the relator's name on the Republican party primary ballot is based on relator's membership in the Texas Senate when this pay increase was passed. Relator seeks a writ of mandamus to compel respondent to accept his application.

The jurisdiction of courts of appeals to issue a writ of mandamus on matters per-

taining to elections is set out in Tex.Elec. Code Ann. sec. 273.061 (Vernon Supp.1986). This section provides:

> The supreme court or a court of appeals may issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the holding of an election or a political party convention. . . .

It is the duty of the state party chairman to receive applications for the office of the attorney general in the Republican Party primary. Election Code sec. 172.022(a)(1) provides:

> (a) An application for a place on the general primary election ballot must be filed with:
>
> (1) the state chairman, for an office filled by voters of more than one country; . . .

Upon presentation of an application for a place on the primary ballot, it becomes the duty of the state chairman of the party executive committee to review the application and if it does not comply with applicable requirements, to reject the application and immediately deliver to the candidate written notice of the reason for rejection. Election Code sec. 141.003; *See Spears v. Davis,* 398 S.W.2d 921 (Tex.1966). The performance of a duty placed by this code on an officer of a political party is enforceable by writ of mandamus in the same manner as if the party officer were a public officer. Election Code sec. 161.009. As such, this Court has jurisdiction to issue a writ of mandamus in this case.

*Election Code sec. 273.063* determines the court of proper venue:

> (a) A petition to a court of appeals for a writ of mandamus under this subchapter must be filed with the court specified by this section.
>
> (b) A petition pertaining to an election must be filed with the court of the supreme judicial district in which:
>
> (1) the respondent resides, or in which one of them resides if there is more than one respondent, if the election is statewide; . . . .

Respondent Strake resides in Harris County, which is in the First Supreme Judicial District. Tex.Gov't Code Ann. sec. 22.-201(b) (Vernon Supp.1986); as such, venue is proper in this Court.

■ Additionally, we note that the overruling of relator's motion for leave to file without comment by the Texas Supreme Court does not preclude our assumption of jurisdiction of this case. Generally, the Texas Supreme Court will not entertain jurisdiction of an original mandamus proceeding wherein like jurisdiction is conferred upon a court of appeals. *Hidalgo Water Improvement District No. 2 v. Blalock,* 157 Tex. 206, 208, 301 S.W.2d 593, 594 (1957); *Brazos River Conservation and Reclamation District v. Belcher,* 139 Tex. 368, 371, 163 S.W.2d 183, 184 (1942); *State v. Ferguson,* 133 Tex. 60, 125 S.W.2d 272 (1939). The supreme court's action in overruling the motion for leave to file reflects an adherence to an "exhaustion" requirement in all but the most exigent circumstances. *Zenith Radio Corp. v. Clark,* 665 S.W.2d 804, 807–08 (Tex.App.—Austin 1983, no writ) (citing *Yett v. Cook,* 115 Tex. 175, 268 S.W. 715 (1925), and *Alexander v. Meredith,* 137 Tex. 37, 152 S.W.2d 732 (1941)) There is no indication that this application has previously been filed in a court of appeals.

Having determined that this Court has jurisdiction, we turn to the merits of relator's assertions.

Apart from the asserted bar of the relator's membership in the 69th Legislature, there is no other disqualification alleged. The heart of the controversy is Tex. Const. art. III, sec. 18, which provides in pertinent part:

> No senator . . . shall, during the term for which he was elected, be eligible to . . . any civil office of profit under the State which shall have been created, or the emoluments of which may have been increased, during such term, . . . .

Relator contends that there was no increase in emoluments that would offend the constitutional prohibition because: (1) the legislation that contains the pay in-

crease provides that, should any member of the 69th Legislature be elected to any civil office of profit, the emoluments of office would be reduced to the 1985 level; (2) the legislature actually did not grant an increase because the adjustment at issue is at the discretion of the attorney general for those employed by the office of the attorney general, not for the attorney general himself; (3) any increase is so insubstantial as to be no increase at all; and (4) a 3% across-the-board adjustment in all state salaries is not an increase but rather is designed to compensate for some of the income lost to inflation.

The Texas Supreme Court has held that the fundamental rule of interpreting the state constitution is to give effect to the intent of the people who adopted it in light of 1) conditions existing at that time, 2) the general spirit of the times, and 3) the prevailing sentiments of the people. *Director of the Department of Agriculture & Environment v. Printing Industries Association,* 600 S.W.2d 264, 267 (Tex.1980). The common sense meaning of the terms is the one in which they should be understood; when the meaning is doubtful, the interpretation that seems best calculated to promote the public interest should be adopted upon the theory that its framers so intended. *Orndorff v. State ex rel. McGill,* 108 S.W.2d 206, 209 (Tex.Civ.App.—El Paso 1937, writ ref'd). It is also pertinent to consider the history of the times out of which the constitution grew, the evils intended to be remedied, and the good to be accomplished. *Travelers' Insurance Co. v. Marshall,* 124 Tex. 45, 55, 76 S.W.2d 1007, 1012 (1934); *Washington v. Walker County,* 708 S.W.2d 493 (Tex.App.—Houston [1st Dist.] 1986).

Art. III., sec. 18 was intended to prevent personal gain or profit by members of the legislature as a result of the office they hold. It was first included in the constitution of 1876 in response to the graft that occurred during the Reconstruction period following the Civil War. Tex. Const. art. III, sec. 18, interp. commentary (Vernon 1984). It appears that the principal purpose of Art. III, sec. 18 is to remove, if possible, any improper personal motive of gain that might influence a legislator to increase the emoluments of a public office with the intention of resigning his legislative post in order to take the office that he helped create or that he made more attractive financially. *Spears v. Davis,* 398 S.W.2d at 929.

In *Director of the Department of Agriculture and Environment,* 600 S.W.2d 264, the court discussed the intent of the framers of the constitution in enacting a section requiring that all printing needs of state agencies be performed under contract with the lowest responsible bidder. In allowing the agency to own and use its own printing equipment, the court determined that the purpose of the provision was to guard against favoritism, corruption, and extravagance in state government, to encourage administrative economy, and to secure the advantages of competitive bidding. *Id.* The purpose was not to benefit private printers, as would appear from a literal reading that ignored the history of legislative intent.

Similarly, in the case at bar, the purpose of the statute was to prevent personal gain and profit by members of the legislature, not to unduly inhibit their right to hold public office. Constitutional or statutory provisions that restrict the right to hold public office should be strictly construed against ineligibility. *Willis v. Potts,* 377 S.W.2d 622 (Tex.1964).

In *Hall v. Baum,* 452 S.W.2d 699 (Tex. 1970), the court denied the petition for writ of mandamus to compel inclusion of relator's name on the primary ballot for nomination as governor. During the relator's term in the senate, the legislature increased the governor's salary from $80,000 to $110,000. The court held this amount to be substantial as a matter of law. It wrote: "We cannot regard this increase as insubstantial or insignificant," *id.* at 703, thereby suggesting that if the increase were "insubstantial or insignificant," it would have issued the writ of mandamus.

G. Braden, *The Constitution Of the State Of Texas: An Annotated And Comparative Analysis* 132 (1977).

The Court in *Hall* distinguished its facts, which involved a substantial raise to the governor, from a 5% across-the-board increase at issue in *Shields v. Toronto,* 16 Utah 2d 61, 395 P.2d 829 (1964). The Utah Court was interpreting a virtually identical constitutional provision. That court held that such an increase did not render incumbent legislators ineligible for election to the offices of governor and secretary of state. The Texas court did not consider this decision persuasive in determining *Hall,* reiterating that the increase in its case was substantial.

■ An emolument of office has been defined as a pecuniary profit, gain, or advantage. Black's Law Dictionary 616 (4th ed. 1968); *see Irwin v. State,* 147 Tex.C.R. 6, 177 S.W.2d 970 (1944). The relatively small amount here in question realistically should be regarded not as a "profit, gain, or advantage," but as a modest adjustment to help state employees keep up with the rising cost of living. There is no reasonable likelihood that a legislator would set up such an increase as a scheme to enrich himself.

Such a conclusion does not nullify the constitutional provision; indeed, that power is not conferred upon the judiciary by the constitution. Rather, we hold that as a matter of law, a 3% across-the-board adjustment in salary for a biennium does not constitute such a pecuniary benefit, gain, or advantage as to be an emolument of office. Therefore, article III, sec. 18 does not apply in this situation.

Even if we had held to the contrary, the holding would not have been dispositive because the legislature took preventive action. The legislature demonstrated a purposeful effort to avoid any conflict with the constitution by including in the appropriations act the exclusion spelled out in section 94, which reduces the compensation for a member of the 69th Legislature elected to another office to the level in effect as of January 1, 1985.

Relator cites in his petition two instances when similar provisions were passed by the legislature to eliminate any question of benefits to legislators from appropriations passed during their terms of office. Such instances are examples of the consistent purpose of the legislature to adhere to the intent of art. III, sec. 18.

Specifically, in September 1977, Senator Max Sherman was appointed President of West Texas State University. The salary for the position had been increased from $34,800 to $37,200 while he was a senator. Before he assumed office, the legislature passed a bill reducing the salary level to the rate in effect prior to Senator Sherman's term. Act of August 5, 1977, ch. 6, 1977 Tex.Gen.Laws 75. The legislative action was never challenged.

The next legislature raised the salaries of district judges. General Appropriations Act, ch. 843, art. I, sec. 1, 1979 Texas General Laws 2445, 2465. The same act set the salary for the Judge of the 139th District Court at the previous level, beginning January 1, 1981. Ch. 843, art. I, sec. 3, 1979 Tex.Gen.Laws at 2470. After resigning from the four-year term for which he was elected commencing in January 1979, Senator Raul Longoria was elected Judge of the 139th District Court for a term beginning in January 1981. Thus, Judge Longoria served on the district court bench for two years of what would have been his senatorial term without the salary increase granted all other district judges.

■ General public acceptance of and acquiescence in administrative and legislative interpretations over a long period of time are particularly persuasive and are to be given serious consideration in construing constitutional provisions. *Director of the Department of Agriculture & Environment,* 600 S.W.2d at 269; *Shepherd v. San Jacinto Junior College District,* 363 S.W.2d 742 (Tex.1962); *Mumme v. Marrs,* 120 Tex. 383, 40 S.W.2d 31 (1931); *American Indemnity Co. v. City of Austin,* 112 Tex. 239, 246 S.W. 1019 (1922); *Brown v. City of Galveston,* 97 Tex. 1, 75 S.W. 488

(1903). Thus, even if we had considered the raise to be an emolument, the provision excluding members of the legislature from receiving the 3% increase avoided the constitutional prohibition.

We have held that a 3% raise does not constitute an emolument of office. Had we held to the contrary, however, the legislature's exclusion of its members from the benefit of any pay increase effectively avoided an increase in the emoluments of office. Therefore, we need not consider relator's other points.

The petition for writ of mandamus is granted, but the writ will not issue unless respondent, George W. Strake, Jr., refuses to accept relator's application.