J.E. "Buster" BROWN, Petitioner,

v.

Fred MEYER and Patricia A. Hill, Respondents.

No. C–9396.

Supreme Court of Texas.

Feb. 7, 1990.

Rehearing Overruled Feb. 7, 1990.

Jerry S. Payne and Lee N. Joseph, Houston, for petitioner and J.E. "Buster" Brown, Lake Jackson, petitioner, pro se.

P. Michael Jung, Jay A. Brandt, and Peter A. Warrick, Dallas, for respondents.

## OPINION

GONZALEZ, Justice.

The issue in this case is whether article III, section 18 of the Texas Constitution disqualifies a mid-term legislator from running for the office of Attorney General because of legislation which has the effect of increasing retirement benefits for certain elected state employees. The trial court rendered judgment declaring that Senator J. E. "Buster" Brown is eligible to be a candidate for Attorney General in the Republican primary. With one justice dissenting, the court of appeals reversed and rendered judgment declaring Brown disqualified. 782 S.W.2d 315 (Tex.App.—Houston [1st Dist.] 1989). On December 29, 1989, on a joint motion of the parties for an expedited decision, we granted the writ of error of petitioner Brown, reversed the judgment of the court of appeals, and rendered judgment affirming the judgment of the trial court.[1]

The issue at hand was raised in a declaratory judgment action by Brown against Fred Meyer, chairman of the Republican Party of Texas. Patricia A. Hill, a Republican candidate for the Office of Attorney General, intervened as a defendant and counterclaimed for judgment against Brown declaring his ineligibility to run for Attorney General.

The parties stipulated to the operative facts at trial. Brown meets the qualifications to be a candidate for Attorney General in the 1990 Republican primary unless article III, section 18 of the Texas Constitution makes him ineligible. He is a mid-term state senator and acted in that capacity in the 71st Legislature.

House Bill 101, enacted by the 71st Legislature, raised the salary of district judges. *Compare* Act of June 16, 1989, ch. 1258, §§ 1, 3, 1989 Tex.Gen.Laws 5073, 5074, *with* Act of August 6, 1987, ch. 78, art. IV, § 1, 1987 Tex.Sess.Laws 751, 755. The retirement benefits paid to qualified elected officials are indexed to the salary of state district judges.[2] Holders of state-

---

1. The court acted prior to the January 2, 1990 deadline for filing for candidacy in order to avoid any question of mootness, and to avoid the delay of a possible subsequent mandamus raising the very same issues.

   On January 3, 1990, the full court met and reviewed the action taken on December 29th. No member of the court requested that the action taken on December 29 be set aside or that the cause be set for oral argument.

   On January 15, 1990, Respondent Patricia A. Hill filed a motion for rehearing and reply brief. In the motion, Respondent Hill informed the court for the first time that the parties considered January 7th to be the first critical date because Respondent Meyer could tentatively accept the filing and defer his decision until

that date and January 15th to be the final possible date for our decision. (January 15th is the last date for certification of candidates to the county chairpersons).

   Finally, the merits of this cause have been fully considered and deliberated by the court.

2. The annual retirement benefit is two percent of current district judges' salaries, "as adjusted from time to time", for each year of participation in the retirement system as an elected official, up to a maximum of 60 percent for those whose classification as an elected official ended before September 1, 1983, and 80 percent for those whose membership continued beyond that date. Tex. Gov't Code §§ 814.103(b)(1), (2) (Vernon Supp.1990). An elected official may

wide offices, as well as legislators,[3] are classified as "elected officials" under the retirement system, and their participation in the system is optional. Tex. Gov't Code § 812.002 (Vernon Supp.1990). Thus, by raising district judges' salaries, House Bill 101 has the net effect of increasing the amount of benefits paid out to retired state officials and employees.

Article III, section 18 of the Texas Constitution provides in relevant part:

> No Senator or Representative shall, during the term for which he was elected, be eligible to (1) any civil office of profit under this State which shall have been created, or the emoluments of which may have been increased, during such term....

Based on our holding in *Strake v. First Court of Appeals,* 704 S.W.2d 746 (Tex. 1986), the court of appeals held that article III, section 18 of the constitution disqualified Senator Brown from seeking statewide office.

In *Strake,* the chairman of the Republican Party of Texas refused to accept Senator Brown's application to be a candidate in the primary race for Attorney General in 1986 because he had held legislative office when an across-the-board salary increase for all state employees was enacted. We observed that the word "emolument" was defined in Webster's World Dictionary (1982) as "the result of exertion; gain or profit; gain from employment or position; payment received for work; salary; wages; fees." *Strake,* 704 S.W.2d at 748. The issue in *Strake* was not what constitutes an emolument; there can be no question that a salary is an emolument. Rather, the issue that we decided was whether a three percent raise, which was less than the increase in the cost of living, was an "increase" in emoluments as that term is used in the constitution. *Id.* Our court held that it was.

As we noted in *Spears v. Davis,* 398 S.W.2d 921, 923 n. 1 (Tex.1966), this provision of article III predates statehood, and was obviously influenced by the Constitution of the United States.[4] Approximately 38 other states have similar constraints.[5] 1 G. Braden, *The Constitution of the State of Texas: An Annotated and Comparative Analysis* 133 (1977).

A leading case deciding the scope of "emoluments" is *State ex rel. Todd v. Reeves,* 82 P.2d 173 (Wash.1938). *See* 63A

---

retire and receive benefits at age 60 with 10 years of service, or at age 55 with 30 years of service. *Id.* at § 814.104. Those members who qualified as an elected official on August 31, 1983, including Senator Brown, may receive retirement benefits at age 60 with 8 years participation in the program, or at age 55 with 12 years of participation. *Id.* at § 814.102. Participants may take early retirement, with reduced benefits, as early as age 50 with 12 years of participation in the system. *Id.* at § 814.102(b).

**3.** Tex. Const. art. XVI, § 67 was adopted in 1975 and empowers the legislature to establish retirement programs for "officers and employees of the state." *Id.* at § 67(b). The system enacted provides for benefits of the class of elected officials to increase as salaries of district judges are increased. Tex. Gov't Code § 814.103.

**4.** Article 1, § 6, cl. 2 of the United States Constitution disqualifies legislators from appointment to civil offices:

> No Senator or Representative shall, during the Time for which he was elected, be appointed to any civil Office under the Authority of the United States, which shall have been created, or the Emoluments whereof shall have been increased during such time....

According to the *Federalist Papers,* the purpose was to prevent bartering with the executive branch for appointments. *The Federalist* No. 76, at 483, 484 (A. Hamilton) (B. Fletcher ed. 1972).

**5.** In some states a legislator is prohibited from holding state office before his legislative term expires, whether the office was obtained by election or appointment. *See e.g.,* Alaska Const. art. II, § 5; Fla. Const. art. II, § 5; Haw. Const. art. III, § 8; Md. Const. art. III, § 17; N.J. Const. art. IV, § V, ¶ 1; N.D. Const. art. IV, § 17; Ohio Const. art. II, § 4; S.D. Const. art. III, § 12; Utah Constitution art. VI, § 7; Wash. Const. art. II, § 13; W.Va. Const. art. VI, § 15; Wis. Const. art. IV, § 12.

Many of the states follow the lead of the United States Constitution, however, and only prohibit legislators from receiving appointed office. *See e.g.,* Ala. Const. art. IV, § 59; Del. Const. art. II, § 14; Ind. Const. art. IV, § 30; Iowa Const. art. III, § 21; Ky. Const. § 44; Me. Const. art. IV, pt. 3, § 10; Mass. Const.Amend. art. LXV; Miss. Const. art. IV, § 45; Mo. Const. art. III, § 12; Neb. Const. art. III, § 16; N.M. Const. art. IV, § 28; N.Y. Const. art. III, § 7; Nev. Const. art. IV, § 8; Or. Const. art. IV, § 30.

Am.Jur.2d *Public Officers & Employees* § 76, at 725 (1984); 67 C.J.S. *Officers* § 24, at 274 (1979). In that case a senator's qualifications to run for the Washington Supreme Court were challenged because he was a member of the legislature that enacted a retirement system for the judiciary. The court defined "emolument" as "profit from office, employment, or labor; compensation; fees or salary". *State ex rel. Todd*, 82 P.2d at 175. The court held:

> This definition is substantially the same as that found in the decisions of the courts. That the word was employed in the constitution in its ordinary sense, as implying *actual pecuniary gain*, rather than some imponderable and *contingent benefit*, can hardly be questioned ... [emphasis added].

*Id. See also State v. Dubuque*, 68 Wash.2d 553, 413 P.2d 972, 980–81 (1966) (salary increase which will not be received unless reelected does not disqualify from running for office, reaffirming *Reeves*).

This construction of emoluments as including actual pecuniary gain rather than contingent benefit has been followed by many of the courts that have considered the question. *See, e.g., Bulgo v. Enomoto*, 430 P.2d 327 (Haw.1967) (disability compensation benefits are too contingent or remote to constitute an increase in emoluments); *State ex rel. Lyons v. Guy*, 107 N.W.2d 211 (N.D.1961) (contribution towards social security withholding is not increase in emoluments because the benefits are remote and contingent); *Campbell v. Kelly*, 157 W.Va. 453, 202 S.E.2d 369, 376 (1973) (pension plan for legislators does not violate constitutional provision setting salary but prohibiting other "emoluments"); *State ex rel. Johnson v. Nye*, 148 Wis. 659, 135 N.W. 126 (1912) (constitutional disqualification based on increase of emoluments cannot be based on conjecture or speculation). *But see State v. Public Employees Retirement Bd.*, 226 Neb. 176, 410 N.W.2d 463 (1987) (retirement plan is encompassed in constitutional prohibition of additional "pay" or "perquisites"); *Chamber of Commerce of E. Union City v. Leone*, 357 A.2d 311 (N.J.1976) (pension plan is "compensation"); *Boryszewski v.*

*Brydges*, 37 N.Y.2d 361, 372 N.Y.S.2d 623, 334 N.E.2d 579 (1975).

Although the decisions of other states construing their constitutions are persuasive authority, our holding rests upon the language and prior construction of our own constitution. When determining the purpose of a provision, we will consider the evil to be remedied and the good to be accomplished by that provision. *Markowsky v. Newman*, 134 Tex. 440, 136 S.W.2d 808, 813 (1940). The purpose of article III, section 18 is to keep improper motivations of personal gain from influencing lawmakers when they establish the rewards of elective office. *Hall v. Baum*, 452 S.W.2d 699, 703 (Tex.1970). Our recognition of this purpose is tempered, however, by the principle that constitutional provisions which restrict the right to hold public office should be strictly construed against ineligibility. *Id.*, at 702.

Applying this rule of construction, we conclude that an increase in "emoluments" as contemplated in article III, section 18 means only actual pecuniary gain and not contingent and remote benefit. Whether a party will actually receive a retirement benefit is dependent on numerous variables. An employee must agree to participate in the program, requiring withholding of salary. The record here is silent about whether Senator Brown is a participating member in the retirement system. Also, the employee must accumulate the requisite number of years "service credit" before any benefit can vest. In the case of an elected official, this will generally require not only serving a full term, but also reelection to office. And the official must remain alive until the earliest time that benefits may vest.

We hold, therefore, that the retirement benefits for legislators and other elected officials are not embraced within the term "emoluments" as used in article III, section 18 of our Constitution. Accordingly, we reverse the judgment of the court of appeals, and affirm that of the trial court.

DOGGETT, J., not sitting.

RAY, J., dissents with opinion joined by MAUZY, J.

RAY, Justice, dissenting.

I respectfully dissent. Today the majority, with strained and expedient reasoning, turns its back on the plain language of the Texas Constitution and departs drastically from recent decisions of this court.

This is a case of first impression which requires the court to interpret and apply Article III, Section 18 of the Texas Constitution. The facts are not in dispute.[1] J.E. Brown was reelected in 1988 to a four year term in the Texas Senate, where he has served since 1981. In 1989 the 71st Legislature voted to increase the salary of district judges. *See* Act of June 16, 1989, ch. 1258, § 4, 1989 Tex.Gen.Laws 5075. This legislation had the effect of raising the retirement benefit of the office of attorney general. Although Senator Brown's elected term has not expired, he now wishes to run for the office of Texas Attorney General in the March 1990 Republican primary election. Senator Brown filed a declaratory judgment action to determine whether Article III, Section 18 renders him ineligible for that election. He is otherwise eligible to be a candidate. The district court rendered judgment for Brown, declaring he was eligible to run. The court of appeals reversed the judgment of the district court and rendered judgment that Senator Brown was ineligible because the retirement benefit of the office of attorney general is an emolument of that office. This court has chosen to review the court of appeals' decision.

Article III, Section 18 of the Texas Constitution provides: ·

No Senator or Representative shall, during the term for which he was elected, be eligible to (1) any civil office of profit under this State which shall have been created, or the emoluments of which may have been increased, during such term....

While this case presents an issue of first impression, we are not without guidance from recent decisions. The analysis this court uses in determining the scope of Article III, Section 18 is well established. *See Strake v. First Court of Appeals*, 704 S.W.2d 746 (Tex.1986); *Hall v. Baum*, 452 S.W.2d 699 (Tex.1970). In determining whether a given benefit is an emolument of office, the court must confine its attention to the office in question, and must refrain from any consideration of the prospective candidate for that office. *Hall*, 452 S.W.2d at 703. In *Hall* the facts established that the motives of Senator Hall in seeking the office of governor "were of the highest order and in the interest of sound government." *Id.* at 701. Had he been elected, Hall would have "benefit[ted] from the salary increase for only some seven and one half to eight months...." *Id.*, at 703. Nevertheless, this court held

that the character of the increase of emoluments of office within the meaning of Sec. 18, Art. III ... *is determined by the amount of the increase to the office and not by the part of the increase which would be paid to the one seeking the office.*

*Id.* (emphasis added). Furthermore, the court must focus on the alleged emolument of the office, and must refrain from any consideration of the nature or amount of the increase. *Strake*, 704 S.W.2d 748. In *Strake* the court of appeals had held that a three percent cost of living adjustment in the attorney general's salary "does not constitute such a pecuniary benefit, gain, or advantage as to be an emolument of office." *Brown v. Strake*, 706 S.W.2d 148, 152 (Tex.App.—Houston [1st Dist.]), *rev'd*, 704 S.W.2d 746 (Tex.1986). This court reversed the judgment of the court of appeals and explicitly rejected its reasoning:

The constitution makes no distinction between a small increase in emoluments and a large one, between an insubstantial

---

1. The facts in this case, stipulated by motion of the parties, amounted to three sentences. The trial on the merits in the statement of facts, including opening and closing statements, amounted to eight double spaced, transcribed pages. The parties have requested the court to take judicial notice of relevant matters.

increase and a substantial one. *It clearly prohibits the designated legislators from holding an office the emoluments of which are increased. Had the framers of the constitution not intended to include all increases, they would surely have said so.*

*Strake,* 704 S.W.2d at 748 (emphasis added).

The majority concedes that the legislation in question "has the net effect of increasing the amount of benefits paid out to retired state officials and employees." These benefits include, of course, the retirement benefit of the office of attorney general. *See* Tex.Gov't Code § 812.002. Therefore, under *Strake* and *Hall,* the narrow issue before this court is whether the retirement benefit of the office of attorney general is an emolument of that office. The majority, however, ignores the clear restrictions of these cases and broadens its analysis to consider facts particular to Senator Brown's candidacy. The majority reasons that attorney general's retirement benefit, in this case, is "remote and contingent" because the record is silent about Senator Brown's interest and participation in the state retirement system.[2] This is the precise case by case analysis which *Strake, Hall,* and the plain language of Section 18 explicitly proscribe. Facts concerning which of the state's benefits Senator Brown chooses to receive are entirely immaterial to the issue before this court.

In *Strake,* we adopted the *Webster's World Dictionary* definition of "emoluments": "the result of exertion; gain or profit; gain from employment or position; payment received for work; salary; wages; fees." 704 S.W.2d at 748. *Black's Law Dictionary* provides a similar definition:

The profit arising from office or employment; that which is received as a compensation for services, or which is annexed to the possession of office as salaries, fees or perquisites. Any perquisite,

advantage, profit, or gain arising from the possession of an office.

470 (5th ed. 1979). This definition of "emoluments" has been the same throughout the history of the English language. *See* 1 *The Oxford English Dictionary* 853 (compact ed. 1971).

The Texas Constitution grants the legislature the power to create a retirement system for elected officials. Tex. Const. art. XVI, § 67. Pursuant to this power the legislature enacted laws creating the Employees Retirement System of Texas (ERS). *See* Tex. Gov't Code tit. 8B (Vernon 1990). ERS defines a special class of membership for elected officials; this class includes holders of offices normally filled by statewide election (e.g., governor, lieutenant governor, attorney general), legislators, and district attorneys. Tex. Gov't Code § 812.002(a)(1). The retirement benefit of the office of attorney general is properly termed a "defined benefit".[3] An attorney general who chooses to participate in the program contributes six percent of his or her gross salary to the system; the state, in turn, contributes seven and four-tenths percent of the total compensation of all system members. *Id.* §§ 815.402(a)(1), 815.403(a)(1). Upon retirement a member receives a life annuity in the amount of "the number of years of service credit in that class, times two percent of the state salary, as adjusted from time to time, being paid a district judge." *Id.* at § 814.103(a). Service credit is accumulated for each month a member holds any position in the elected class. *Id.* § 813.201. Therefore, a member's years of service in each of the qualified offices in the elected class are totalled at the time of retirement to calculate the amount of the retirement annuity.

It is clear from the structure of the ERS plan, and from the state's seven and four-tenths percent contribution, that the ERS defined benefit for the office of attorney general is a form of compensation for service in that office.[4] Those who disagree

---

**2.** This silence is not surprising, considering the trial on the merits below. *See supra* note 1.

**3.** *See generally* J. Gee, *Pensions in Perspective* (1987).

**4.** The present salary of the attorney general is $74,698. Act of June 16, 1989, ch. 1263, 1989 Tex.Gen.Laws 5146. The present salary of district judges is $72,675. Act of June 16, 1989, ch. 1259, § 4, 1989 Tex.Gen.Laws 5075. Assuming

must nevertheless concede that the ERS benefit provides "gain" and "profit", and that, at the very least, it is a "perquisite" of the office of attorney general. The retirement benefit of the office of attorney general is therefore an emolument of that office within the meaning of Article III, Section 18.

This conclusion is supported by analogous authority from this court. This court has long recognized the compensatory nature of retirement benefits. The issue most often arises in our decisions concerning this state's community property scheme. In 1923 this court adopted the following general assessment of employee benefits:

> It was in no sense a donation to the employé for individual merit, but was manifestly additional compensation for faithful and continuous service. It was as much a fruit of his labors as his regular wages or salary. It was in the strictest sense a "gain" added to the common acquests of the marital partnership, as the direct result and fruit of his labor and services.

*Lee v. Lee,* 112 Tex. 392, 247 S.W. 828, 833 (Tex.Comm'n App.1923, opinion adopted). Forty-two years later, in *Herring v. Blakeley,* 385 S.W.2d 843, 846 (Tex.1965), this court, relying on and quoting from *Lee,* held that a vested interest in a profit-sharing retirement plan was community property, even though funds were not available at the time of divorce. The majority reasons that the ERS benefit in question is too "contingent and remote" to be an "emolument" because the candidate elected attorney general may not become immediately vested in that benefit. This distinction turns a blind eye to the landmark case of *Cearley v. Cearley,* 544 S.W.2d 661, 666 (Tex.1976), where this court held that a contingent interest in a retirement benefit is community property. In the *Cearley* opinion this court again quoted from *Lee,* and further observed: "Pension and retirement benefits have become an increasingly

---

a constant salary rate, the attorney general, in the four year term beginning in 1991, could contribute six percent of his or her gross salary to ERS, resulting in a total contribution of $17,928 (6% × $74,698 × 4 yrs. serv.). Upon retirement that four year service would garner the retired attorney general an additional $5,814 per year for every year of retirement (2% × 4 yrs. serv. × $72,675). If the attorney general lives for ten years after retiring, the net benefit (total benefit minus the attorney general's contribution) attributable to the four years of service as attorney general would be $30,212 (2% × 4 yrs. serv. × $72,675 × 10 yrs. ret.—$17,928 contrib.). If he or she lived twenty years after retiring, the net benefit would be $88,352 (2% × 4 yrs. serv. × $72,675 × 20 yrs. ret.—$17,928 contrib.). This net benefit would be considered gross income for purposes of federal income tax. 26 I.R.C. §§ 61(a)(9), 72(a) (West Supp. 1989); *see also Heard v. Commissioner,* 326 F.2d 962, 963 (8th Cir.1963), *cert. denied* 377 U.S. 978, 84 S.Ct. 1884, 12 L.Ed.2d 746 (1964) (amount received by taxpayer under Civil Service Retirement Act in excess of amount contributed is taxable).

Because, as discussed above, the majority insists on clouding the issue before this court by considering facts particular to Senator Brown, I feel compelled, for rhetorical purposes only, to apply the ERS formulae to those facts. Senator Brown was born on December 10, 1940. *Guide to the Texas Legislature* (1990). He has been a state senator since 1981. *Id.* If he were elected attorney general in 1990, his term of office would expire at the end of 1994, just after Senator Brown reached the age of 54. Assuming he has continually participated in the ERS, Senator Brown would be immediately eligible for full retirement with 14 years service in the elected class. Tex.Gov't Code § 814.102(b). In the United States the life expectancy of a white male, age 54, is 22.7 years. United States Dept. of Commerce, Bureau of Census, *Statistical Abstract of the United States* 73 (109th ed. 1989). If Senator Brown retired at the end of 1994 and lived for 22.7 years, the following would be true:

1. his total retirement benefit would be $461,922.30 (14 yrs. serv. × 2% × $72,675 × 22.7 yrs. ret.);
2. his net retirement benefit entirely attributable to his four year service as attorney general would be $131,977.80 (4 yrs. serv. × 2% × $72,675 × 22.7 yrs. ret.—$17,928 contrib.); and
3. his total retirement benefit *entirely attributable to the legislature's 1989 increase in the retirement benefit of the office of attorney general would be $30,036.64* (4 yrs. serv. × 2% × [$72,675 − $56,135] × 22.7 yrs. ret.).

If the benefit which Brown or any other retired state official receives is not compensatory, then it must be a gift. The legislature's appropriations which fund the ERS ($197,409,000 for fiscal 1990, *see* Act of June 16, 1989, ch. 1263, 1989 Tex.Gen.Laws 5211) would therefore be unconstitutional. *See* Tex. Const. art. III, §§ 44, 51.

significant part of the consideration earned for military, governmental and private services...." 544 S.W.2d at 666.

The constitution, statutes, and case law of this state provide ample grounds to support the conclusion that the attorney general's retirement benefit is an Article III, Section 18 "emolument". Because the majority turns, for persuasive authority, to the law of other jurisdictions, I am compelled to elaborate on the cases they cite.[5] Several states with constitutional provisions similar to our Section 18 have adopted the rule that the retirement benefit of an elected office is not an emolument. The seminal case for this construction is *State ex rel. Todd v. Reeves*, 196 Wash. 145, 82 P.2d 173 (1938), discussed and quoted by the majority, and cited consistently in other state's decisions adopting such a construction.[6] *E.g. State ex rel. Lyons v. Guy*, 107 N.W.2d 211, 215–216 (N.D.1961); *Campbell v. Kelly*, 157 W.Va. 453, 202 S.E.2d 369, 376 (1974). In recently addressing the same issue which is now before this court, the Nebraska Supreme Court correctly assessed the persuasive value of *Reeves*:

> [*Reeves*] has no relevance to our inquiry. Therein, the Constitution provided that a legislator could not be elected to any office "the emoluments of which shall have been increased, during the term for which he was elected." The *Reeves* court held that the adoption of a retirement plan for judges was not an "emolument"; thus, one who had been a legislator when the plan was adopted could seek election as a judge. In so ruling, the court said the word "emolument"

implied actual pecuniary gain, rather than some imponderable and contingent benefit. There is nothing imponderable and contingent about paying a specified monthly allowance such as is contemplated by the plan before us. It should also be noted that the *Reeves* court specifically avoided deciding whether the retirement plan was a pension, adjusted or deferred income, or insurance.

*State v. Pub. Employees Retirement Bd.*, 410 N.W.2d 463, 467 (Neb.1987) (citations omitted). Furthermore, *Reeves* is factually distinguishable from the case before us today. *In Reeves* the facts established conclusively that the aspiring candidate could not vest in the recently created retirement benefit in the term of office for which he was seeking election. 82 P.2d at 174. While the impoverished record in this case does not indicate whether Senator Brown participates in ERS or is vested in an ERS benefit, it also does not preclude these possibilities as did the record in *Reeves*.

I lay part of the blame for the error of the majority on the ad hoc manner in which the court disposed of this case. This case came before us as an application for writ of error. The court's routine for processing such an application is well established and well known.[7] The application is docketed by the clerk and randomly assigned to a justice. The parties' arguments are studied and then presented to the court in conference. Generally, the justices may then hold the case for further study, vote to deny the writ, or vote to grant the writ. The average time for processing the appli-

---

**5.** This is not the first time the court has examined the law of collateral jurisdictions in construing Article III, Section 18. In *Hall* we concluded:

> Our analysis of the cited cases from other jurisdictions indicates a total lack of unanimity of thought as to the wisdom of nullifying the constitutional proscriptions with which we are dealing, as well as a lack of unanimity of reasons for their nullification.

452 S.W.2d at 705.

**6.** The holding in *Reeves* is now essentially moot in the State of Washington. In 1979 the people of Washington amended their constitution to provide, in part:

> Any member of the legislature who is appointed or elected to any civil office in the state, the emoluments of which have been increased during his legislative term of office, shall be compensated for the initial term of the civil office at the level designated prior to the increase in emoluments.

Wash. Const. art. II, § 13.

Since one cannot collect retirement benefits for an office which one presently holds, and since there is now no prohibition against holding office even if the emoluments have been increased, the issue whether a retirement benefit is an "emolument" is a meaningless question in Washington.

**7.** *See, e.g.*, 21 Baylor L.Rev. 439, 445–449 (1969).

cation is about 80 days, from docketing to disposition, though this number varies with the size of the court's docket. If the case is granted, it is set for oral arguments, usually about six or eight weeks hence. The justices use this time to review the briefs of counsel, conduct additional research, and reflect on the case. Shortly before arguments the duty of preparing the first draft opinion is randomly assigned to a justice. After the case is argued before the court, that justice prepares a draft opinion. The draft opinion is distributed to the court, and each justice has several days to assess the drafting justice's effort. The court then discusses the proposed opinion and judgment in conference. If a justice cannot accept the result reached in the proposed opinion, that justice may delay final action in order to study the cause further or to prepare a dissenting opinion.

This "standard operating procedure" is especially appropriate to a case of first impression under Article III, Section 18. As the court acknowledged in *Hall*, "[a] matter of such serious import requires that the suggested reasons be considered and examined somewhat in depth." 452 S.W.2d at 705. Nevertheless, it appears that the court may have disposed of this case with unusual haste. The application for writ of error in this case was filed with the clerk of the court on December 29, 1989. 33 Tex.Sup.Ct.J. 143. Presumably, the application was forwarded to chambers and randomly assigned to a justice who thoroughly reviewed the briefs of counsel and prepared a presentation for the court. Apparently, the court then met in conference and, on December 29, 1989, voted to grant the writ of error. *Id.* at 142. One must assume that after a thorough examination of the issues and arguments, and an exhaustive discussion of each justice's position, the court, on December 29, 1989, arrived at, and announced, its decision.[8] *Id.* The reader is left to draw his or her own con-

clusions on the propriety of the court's procedures in this case.

In conclusion, the court of appeals, though clearly troubled with the judgment it rendered, has adopted the only correct application of Art. III, Section 18. As the court of appeals must have realized:

> If Sec. 18, Art. III, has outlived its usefulness and there is no longer need for the proscriptions there provided, as some of the courts of other states have indicated, the Constitution itself prescribes the remedy through a constitutional amendment submitted to and adopted by the people.

*Hall*, 452 S.W.2d at 705. I would withdraw this court's "per curiam order" of December 29, 1989, and would "refuse the application with the notation 'Refused.'" Tex. R.App.P. 133(a). I regret that the majority does not today realize what it will eventually accept as truth: that the momentary loss of face from the prompt acknowledgment of the good faith error in the precipitous rendition of the court's December 29, 1989 judgment would be inconsequential by comparison to the enduring ignominy which the court today ensures itself by refusing to admit that error.

MAUZY, J., joins in this dissent.

---

**8.** I was out of town for the holidays and was therefore not present during the court's deliberation on this case. I was, however, contacted by telephone. At that time I expressed my opinion that the legislature's increase in the attorney

general's retirement benefit is an increase in the emoluments of that office, and that a contrary conclusion could not withstand constitutional scrutiny.